## In the Matter of Johnson's Will.

Where a will, unrevoked, has been lost or destroyed, its contents may be proved by parol evidence, and it may on such evidence be admitted to probate. But its contents, and the fact that it was not revoked, must be established by clear and satisfactory proof.

Certain evidence offered in such a case to prove the contents of a will, held insufficient.

Declarations of a deceased person, to the effect that he was leaving a will, held admissible for the purpose of showing that a lost will had not been revoked.

PROBATE of a lost will. Judge *Carpenter* of the Supreme Court was called in to sit, as a judge of the Superior Court, with the judge of probate of the district of Newtown, (under the statute authorizing it, Gen. Statutes, tit. 11, § 75,) in determining whether a document purporting to be a true copy of the will of David H. Johnson, deceased, should be admitted to probate. The facts are given in the opinion. The case was heard, May 22d, 1874.

CARPENTER, J. Mr. Johnson executed a will on or about the 6th day of August, 1872. He died February 24th, 1874. A paper is produced which is claimed to be a copy of said will, in substance, and the court is asked to admit it to probate, the original having been destroyed or lost. Having been called under the statute to assist the court of probate in this matter, I have thought best to state in writing the conclusion to which I have come and the reasons therefor.

Two questions arise:—1st, as to the destruction without revocation, or loss, of the will; and, 2d, as to its contents.

That an unrevoked will lost or destroyed may under some

circumstances be admitted to probate, and its provisions carried into effect, is not denied. But the contents of the will, and the fact that it was not revoked, must be established by clear and satisfactory proof. The existence of the will, and its loss or destruction, are not doubted. The only point in dispute under the first head is, whether the will was revoked.

The mere absence of the will raises a presumption that it was revoked. Whether that presumption is one of law or of fact is perhaps immaterial, as in either case it must be rebutted by proof. Evidence for that purpose may be direct or circumstantial. *Patten* v. *Poulton*, 1 Swabey & Tristram, 55. It appears from the evidence that the deceased exhibited decided symptoms of insanity prior to January 27th, 1874. From that time to the time of his death he was wholly bereft of his reason. On the 29th, he destroyed by burning a package of money (currency). At that time he had access to his safe in which he kept his valuable papers, and which had been the depository of his previous will, and presumptively of the will in question. About that time some papers from the safe disappeared and have not since been found. The will had been in his possession from the time of its execution. On several occasions between August, 1872, and December, 1873, he spoke of his will as an existing instrument, and expressed his satisfaction with the disposition of his property thereby made. A question is made as to the admissibility of these declarations. I am satisfied that they were admissible as tending to prove that his will was not destroyed *animo revocandi*.

On the 20th day of December, 1873, while returning from the funeral of a relative, a question arose whether he left a will; and during the conversation he said, in substance, that in the case of the deceased it was not so important, but in his own case he regarded it as very important, and seemed pleased that he had made a will. It does not appear that the subject was ever alluded to by him afterwards. It further appears that his relations to his wife, (he left no children,) and the other legatees and devisees, remained unchanged till his death.

In the Matter of Johnson's Will.

On the whole evidence I am satisfied that the deceased destroyed his will while insane, and that it was not thereby revoked.

2. As to the contents of the will.

Mr. Redfield, in his work on Wills, vol. 1, p. 349, note, says :—"And a lost will may be established by the testimony of a single witness, notwithstanding the statute requires its execution in the presence of two or more." This is doubtless true ; but I apprehend that the court ought to be satisfied, not only that the character and standing of the witness are entirely above suspicion, but that he is capable of expressing with clearness and accuracy the precise meaning of the original will. Not only so, but the circumstances ought to be such as to afford no suspicion of the trustworthiness of his recollection, and he should be free from bias or interest. Indeed whatever may be the number of witnesses the proof of contents should be clear and satisfactory. In *Davis* v. *Sigourney*, 8 Met., 486, WILDE, J., says :—" To authorize the probate of a lost will by parol proof of its contents, depending on the recollection of witnesses, the evidence must be strong, positive, and free from all doubt. Courts are bound to consider such evidence with great caution, and they cannot act upon probabilities." This strictness is requisite in order that courts may be sure that they are giving effect to the will of the deceased, and not making a will for him.

In this case there is but a single witness. His irreproachable character, and his ability to comprehend fully and express clearly the meaning of the will, are unquestionable. His testimony is direct and positive as to all parts of the will; and, at the time of testifying, he appeared to be free from doubt or hesitation.

On the other hand it must be remembered that the will is a long one, requiring from three to four hours' time in its preparation. It contains several sections or clauses, and there are quite a number of pecuniary and specific legacies, varying in amount from $300 to $50,000. Life estates with remainders to other parties and trusts are created. The will was written on or about the 6th of August, 1872. At that

In the Matter of Johnson's Will.

time the witness read it, but has never seen it since, and it does not appear that he had any occasion to think or converse of or concerning it or its contents during all that time, a period of more than eighteen months. He has no copy or other memoranda to refresh his recollection, and it is not claimed that he is possessed of extraordinary powers of memory. Whether under these circumstances it is in the power of the witness to re-produce a reliable copy of the will may well admit of doubt. The difficulty, I might almost say impossibility, of retaining in the memory of an ordinary man for so long a time all the provisions of a somewhat complicated will, must be obvious to every one; and when, as in this case, there is no motive or inducement to remember, and the whole subject has passed from the mind of the witness, as a matter in which he had no special concern, if the contents of the will could be reduced to writing without material variance, not only in the language, but in the meaning and substance, it would be remarkable indeed.

But, aside from this, it appears that the witness is a neighbor and friend of some of the principal legatees, and is himself a member of a parish which is also a legatee. When first spoken to on the subject he does not pretend that he was able to recall at once all the provisions of the will. It was only after thinking of the matter for several days, and after having one or more interviews with the widow, that he attempted to reduce it to writing. He then followed his own recollection except in respect to one clause. In that his recollection differed from the impression which the widow from some source had obtained, and he prepared it according to her impressions, thinking that he might perhaps be mistaken. Several days more elapsed when the widow informed him that she gave up that point, and he then prepared a copy wholly from his own recollection, which is the copy propounded for probate. The doubt which he entertained with respect to that clause may, and under similar circumstances probably would, have existed with reference to other clauses of the will. However that may be, the doubt which did exist was removed, not by anything positive and certain, but by a mere effort of the memory, aided materially by the fact that the widow yielded her im-

In the Matter of Johnson's Will.

pressions. Under these circumstances, even if it be admitted that the mind of the witness was uninfluenced by these repeated interviews with the parties in interest, and by his willingness to do them a favor, can we be quite certain that the copy produced is in substance a true copy of the original will? Is there not room for a reasonable doubt?

Again—the copy propounded shows that some of the legacies and devises were subject to certain limitations and restrictions. While the memory may retain and be able to recall those restrictions and limitations generally, it is by no means certain that all will be remembered; and even those which are remembered may have been expressed in the original will in very different language from that employed in the copy before us. The importance of this will be appreciated when we remember that large interests may, and often do, depend upon the precise language used.

The order in which all the bequests were made, the witness does not remember with certainty, and the name of one of the legatees he had forgotten until it was suggested to him. These circumstances may not be very important in the present case, except as they tend to show that the recollection of the witness is not perfectly reliable in all respects.

I can hardly believe that the interest which the witness had under this will had any perceptible influence upon his testimony; nevertheless it may, in connection with his friendly feelings for the widow and other legatees, have unconsciously induced him to be more confident in respect to the contents of the will than he otherwise would have been. I cannot say therefore that I think the witness was entirely free from bias. The interest which he had, though slight, would have disqualified him from being a juror, and he himself regarded it as disqualifying him from acting as judge of probate in the settlement of the estate. Perhaps it would be too much to say that in no case can the contents of a lost will be established by the testimony of an interested witness, but if done at all, the case should be a strong one in every other respect.

On the whole I am of the opinion that the contents of this will are not proved with that degree of certainty which the law requires.