Digerían, J.
It is conceded that Daniel Behrens, on the 31st day of October, 1882, made and executed in due form of law his last will and testament. On the 28th day of November, 1884, he died leaving real and personal property, and as his heirs at law, Frederick Behrens and Henry Behrens, the plaintiffs herein, and George Behrens, the defendant, his only sons. After his decease, it was discovered that his will had been lost or destroyed, and the question arose, whether the will was lost or destroyed prior or subsequent to the death of the testator, and if before his death, whether or not it was destroyed by 'the testator himself, with the intention of revoking the same. On the application of George Beh *329 rens, the probate court found that the will was not revoked by the testator, but that it had been lost or destroyed subsequent to his death, and thereupon established its contents to be as in the alleged copy produced in court, and admitted the same to probate.
In the action to contest the validity of the will, the order of probate was prima facie evidence of its due attestation, execution and validity. By section 5948 of the Revised Statutes, last wills and testaments which have been lost, spoliated, or destroyed, when established as to their contents, and admitted to probate, are, in all respects, to be governed by the laws in force relating to other wills, not only as relates to the contents of the same, but in all other matters. In a proceeding to contest the validity of such a spoliated will, admitted to probate, the burden of proof is on the contestants to invalidate it. Haynes v. Haynes, 33 Ohio St. 598; Mears v. Mears, 15 Ohio St. 90. In Banning v. Banning, 12 Ohio St. 437, it is held, that where the contents of a spoliated will have been found, admitted to probate and recorded, in a proceeding duly had for that purpose in the probate court, such record is prima facie evidence, in a future proceeding to contest the validity of such will, not only of the due attestation and execution of such will, but also of its contents; and on the trial of the issue whether the will admitted to probate is the last will of the testator or not, the same must stand, unless the jury are satisfied, by a preponderance. of proof, that it is not, in substance, the will of the testator.
In assuming the burden of establishing by a preponderance of evidence, that the will admitted to probate was not the last will of Daniel Behrens, it became material for the contestants to prove, that his last will was not in existence at the time of his death, but had been revoked by the testator tearing, canceling, obliterating, or destroying the same, with the intention of revoking it. Section 5944 of the Revised Statutes authorizes the probate court to admit to probate an unrevoked last will, when the original has been lost, spoliated, or destroyed, subsequent to the death of the testator, *330 or after the testator has become incapable of making a will by reason of insanity. The court in the matter of Sinclair's Will, 5 Ohio St. 291, in construing the same statutory provision then in force, held that the legislation of the state, as it then existed, did not permit a will lost, or destroyed, to be established, unless it was in existence subsequently to the death of the testator. “ The General Assembly,” said Swan, J., “ deemed it either impolitic, as opening the door to imposition and perjury, or unnecessary, to permit wills lost or destroyed before the decease of the testator to be established.”
The court, therefore, as an essential fact to be determined, charged the jury as requested by the plaintiffs : “ Before you can find that it was the last will and testament of the said Daniel Behrens, you must find that it existed, and had not been revoked at the death of the testator,'or at such time prior to his death when he ceased continuously after that to be of disposing mind and memory; and, unless you find from the evidence, that the said will was actually in existence at the time when the said Daniel Behrens ceased to be of disposing mind and memory, at or prior to his death, then, the conclusion of law follows, that the testator destroyed the will, with intent thereby to revoke it.”
If the will did not exist at the time of the testator’s death, and had been destroyed prior to that time, it could not be established under the statute as a will, of which the original had been lost, spoliated, or destroyed, subsequent to the death of the testator.
And here it may be inquired, what, if any, conclusion of law or presumption arises from the fact of the non-existence, at the time of the testator’s death, of his last will and testament proved to have been made and executed. As requested by the plaintiffs, the court gave the following charge to the jury:
“ The presumption is, that if a will be not found after the death of an alleged testator, it was destroyed with intention of revoking it. This presumption may be strengthened by the declarations made by the testator before his death, to the effect that he intended to destroy the will, and if you be *331 lieve from the evidence that the will alleged to have been made on the 31st of October, 1882, by Daniel Behrens, was not in existence after his death, you are at liberty to believe from this fact alone, that the said will was destroyed by said Behrens with the intention of revoking it, and you may consider as strengthening this presumption any declarations made to persons before his death, by the said Daniel Behrens, that he would destroy the will, or had destroyed the will, or intended his children should share equahy in his property.”
In giving the aforegoing instructions to the jury, and in admitting in evidence the declarations of the testator as to destroying his will, and dividing his property equally among his three sons, we find no error for which the judgment of the court of common pleas should have been reversed.
In general, it may be assumed that a will is kept in the custody of the testator himself, or under his control, to be changed, modified or revoked according to his good pleasure. If at his decease it cannot he found, it is more reasonable to presume that he himself has destroyed his will, than that some other person has committed the crime, and incurred the penalty of secreting or destroying it. In Betts v. Jackson, 6 Wend. 181, it is said by Chancellor Walworth : “ Legal presumptions are founded upon the experience and observation of distinguished jurists as to what is usually found to be the fact resulting from any given circumstances, and the result being thus ascertained, whenever such circumstances occur, they are prima facie evidence of the fact presumed ; and I have no doubt that five wills, made with all due formality, have been destroyed by the testators either in secret, or when no one was present to be a witness to prove the fact, to where there has been one destroyed or suppressed by fraud, or lost by time or accident, before the death of the testator.” Indeed, it is now well settled, and is a principle of universal acceptance in both the English and American courts, that where a will is proved to have once existed, and the testator retained custody of it, or had ready access to it, and it cannot be found after his death, a legal presumption is raised that the will was destroyed by *332 him with the intention of revoking it. In the recent case of Collyer v. Collyer, 110 N. Y. 486, the rule is stated, that when a will previously executed cannot be found after the death of the testator, there is a strong presumption that it was revoked by destruction by the testator, and this presumption stands in the plaee of positive proof. See also 1 Redf. Wills, 329; 1 Wms. Exrs. 157, and cases cited; 2 Am. Lead. Cas. (5 ed.), 510; Foster’s Appeal, 87 Pa. St. 67; Minkler v. Minkler, 14 Vt. 125; Betts v. Jackson, supra; Minor v. Gruthrie, 4 S. W. Reporter, 179 (Ct. of App. Ky.); Hatch v. Sigman, 1 Demarest, N. Y. 519; 1 Jar. Wills (5 Am. ed.), 290, and cases cited; Wargent v. Hollings, 4 Hagg. Ecc. 245; Lillie v. Lillie, 3 Hagg. Ecc. 184.
Such a presumption of revocation may be overcome by circumstantial or other proof to the contrary. It may be rebutted by showing that the testator had no opportunity to revoke, and that his will was destroyed after his death. And for this purpose, declarations of the testator to various members of his family down to a few days before his death, expressive of his satisfation at having settled his affairs, and intimating that his will was left with his attorney, have been held to have been properly admitted. Whitely v. King, 17 C. B. N. S. 756; Keen v. Keen, L. R. 3 P. & D. 105; In re Johnson’s Will, 40 Conn. 587.
But while the declarations of the testator may be used to weaken the presumption that he has destroyed his will with the intention of revoking it, his declarations may also be received as evidence 'to strengthen and fortify the presumption that he has destroyed his will with such intention. Whether it be the making of a will or the destroying of one, the competency of the testator's declarations as evidence is alike in each case, and for the same reasons admissible. Collagan v. Burns, 57 Me. 465. In Keen v. Keen, supra, in order to rebut the presumption of revocation arising from a will which was in a testator’s possession not being found after his death, evidence was produced of declarations by the testator showing an intention to adhere to the will. The court held that evidence of declarations of an intention not to ad *333 here to the will, produced by the opponents of the will, was admissible to contradict the evidence of adherence, whatever might be the form of words in which such intention was expressed'; and therefore that a declaration by the testator that he had burnt his will was admissible, not as evidence of the fact of destruction, but as evidence of intention. Sir J. Hannen, in his opinion, in the case, says: “I think there can be no doubt that while on the one hand evidence of statements made by a testator subsequent to the execution of a will that he intends to act in conformity with the disposition contained in the will is clearly admissible, it necessarily follows that other statements made by the testator, to a contrary effect, must also be admissible. The admissibility of such evidence cannot depend on the form of words in which the intention is expressed. Therefore a statement by a testator that he has altered his mind as to the disposition of his property, and that he has therefore destroyed his will, although it may not be evidence of the fact of destruction of the will, is evidence of intention from which the fact of destruction may be inferred, there being other circumstances leading to the same conclusion.”
In Lawyer v. Smith, 8 Mich. 412, after the death of the testatrix, a will twenty-five years old was discovered, which was either torn or worn in several pieces. Whether the injury to the instrument was done by the testatrix or by some other person, and if by her, whether accidentally, or intentionally, and for the purpose of revoking'the will, were held to be questions of fact for the jury; and to aid them in determining these questions and not as separate and independent evidence of a revocation, the declarations of the testatrix, made after the date of the will, that she had destroyed it, were held to be competent evidence.
In Patterson v. Hickey, 32 Ga. 156, it was decided, that where the question is revocavit vel non, parol evidence, as to the acts and declarations of the testator, are admissible, although made at any time between the making of the will and the death of the testator.
A will is said to be ambulatory until the testator dies *334 Until his death the instrument has no force or effect, and until then, he has the power to cancel or revoke it. If from being clothed with this power the presumption arises after his death that he destroyed his will, that presumption will be aided by his declarations as expressive of his feelings and intention. In Weeks v. McBeth, 14 Ala. 474, it was held, that the declarations of the testator were admissible to strengthen the presumption of revocation, and to show that the will was destroyed by the testator animo revocandi. And it was there stated as the invariable rule in the courts of England, to admit.the declarations of the testator, either to strengthen, or to repel the presumption of revocation, arising from the non-production of the will, after the death of the testator; or to explain the act of destroying or canceling it.
The case of Smiley v. Gambill, 2 Head. 164, was a contest upon the will of Margaret Stewart. The testatrix burnt a paper which she believed was her will, and died in that belief. This was proved by her uniform declarations, and by her acts in disposing by deeds otsome of the same property named in the will, and in applications made to write another will for her, on the ground that she had destroyed the first. Caruthers, J., in delivering the opinion of the court, said that if the jury believed, as a matter of fact, that Mrs. Stewart burnt a paper which she thought was her will, although it was not, with the intention of revoking by its destruction, and honestly believed that she had done it, and continued in that belief, without any subsequent recognition, or even knowledge of its existence, the paper propounded would not be her will. As testimony bearing on this question, her declarations alone might not be sufficient, but they were competent, and it would be for the jury to determine whether they, together with other facts proved, made out the fact of burning, or intention to do so, by the act done.
The strongly expressed conclusion of the court in Reel v. Reel, 1 Hawks 248, is in’ accord with citations already made. “ To reject the declarations of the only person having a vested interest and who was interested to declare the truth, *335 whose fiat gave existence to the will, and whose fiat could destroy, and in doing the one or the other could interfere with the rights of no one, involves almost an absurdity; and they are received, not upon the ground of their being a part of the res gestee, for whether they accompany an act or not, whether made long before or long after making the will, is entirely immaterial as to their competency. Those circumstances only go to their weight or credit with the tribunal which is to try the fact.” See, also, Collagan v. Burns, supra; Tynan v. Paschal, 27 Tex. 286; Youndt v. Youndt, 3 Grant Cas. 140.
It is not necessary to refer to the numerous other authorities which we have examined, and which bear directly upon this branch of the case. No claim is made that a will may be revoked by the mere declarations of the testator, or otherwise than in the modes prescribed by the statute. But where a legal presumption is raised upon the' decease of the testator, that he destroyed his last will and testament in the statutory mode with the intention of revoking it, it is obvious, that while the declarations of the testator may be admitted as evidence towards rebutting the presumption of such destruction and revocation before his death, they may with equally good reason be received as evidence to support and strengthen that presumption.
It is urged in behalf of the defendant in error, that the charge to the jury was erroneous and misleading. At the trial the defendant excepted generally to the whole charge given by the court to the jury without pointing out specifically the part or proposition of the charge excepted to, or the grounds of his exception. Of such an exception a reviewing court is not bound to take notice. Adams v. State, 25 Ohio St. 584; Adams v. State, 29 Ohio St. 412; Berry v. State, 31 Ohio St. 219; Everett v. Sumner, 32 Ohio St. 562; Powers v. Railway Co., 33 Ohio St. 429; Insurance Co. v. Tobin, 32 Ohio St. 77. But, in the case'at bar, upon an examination of the charge to the jury, we discover no error calling for a reversal of the judgment of the court of com *336 mon pleas. The judgment of the circuit court should be reversed, and that of the court of common pleas affirmed.

Judgment accordingly.