Wilkin, J.
The grounds of reversal assigned in plaintiff’s brief are: (1) The verdict and judgments below are contrary to law, (2) admissions of incompetent testimony, (3) refusal to give certain instructions of law to the jury, and (4) errors in the general charge.
The first assignment challenges the sufficiency of the evidence produced at the trial, to establish a lost or destroyed will. ' While this court is not required to weigh the evidence in a case on error, and ordinarily will not do so, yet where relief is sought that can be afforded only upon clear and convincing proof, it will do so for the purpose of determining whether the proof was sufficient. Minshall, J., in Stewart v. Gordon, 60 Ohio St., 170, 174, citing Ford v. Osborne, 45 Ohio St., 1.
*10 The standard of evidence in cases like the one at bar has been defined by the courts and text-writers in language somewhat variant but in import the same. For example: The burden of proof is on a party seeking to establish a lost will by parol evidence, to prove its contents by evidence strong, positive and free from doubt. Newell v. Homer, 120 Mass., 277; Davis v. Sigourney, 8 Metc., 487. The evidence must be clear, certain and conclusive as to its execution and its provisions and conditions. Russell v. Bruer, 64 Ohio St., 1; Miller v. Stokely, 5 Ohio St., 194; Clark v. Turner, 50 Neb., 290, 301. Where a will, unrevoked, has been lost or destroyed its contents may be proved bjr parol, but the fact that it was not revoked must be established by clear and satisfactory proof. In re Johnson’s Will, 40 Conn., 587.
■ In the Connecticut case, the court expounds the rule thus: “The court ought to be satisfied, not only that the character and standing of the witness .are entirely above suspicion, but that he is capable of expressing with clearness and accuracy the precise meaning of the original will. Not only so, but the circumstances ought to be such as afford no suspicion of the trustworthiness of his recollection, and he should be free from bias or interest. * * * This strictness is requisite in order that courts may be sure .that they are giving effect to the will of the deceased and not making a will for him.” In Chisholm’s Heirs v. Ben, 7 B. Mon., 408, Marshall, C. J., declares: “If there be not some stringency in the rule of proof, * * * if a doubtful inference * * * *11 is to authorize the establishment of a will, * * * an inducement and opportunity may be offered for setting up spurious wills, the. prevention of which is no less the subject of the statute and of the law, than is the frustration of the fraud which would suppress a valid will.”
The legal policy of the rule is hinted at m a note to 3 Redfield on Wills (3 ed.), 16, thus: “There are so many motives which might induce the suppression of a will, * * * the possible motives for such an act are so infinitely diversified, that it will always be next to impossible to guard against all possibility of fraud and imposition; * * * and it is safe to act upon that degree of incredulity, in all such matters, which will be sure to expose any suppression of it (the will) from sinister designs. A copy of an alleged lost will is obviously more satisfactory than any amount of testimony dependent upon the memory of witnesses.”
“By satisfactory evidence, which is sometimes called sufficient evidence, is intended that amount of proof which ordinarily satisfies an unprejudiced mind, beyond a reasonable doubt.” 1 Green-leaf on Evidence (16 ed.), Sec. 2. “Evidence is said to satisfy the mind when it is such as frees the mind from doubt, suspense or uncertainty.” Baines v. Ullman, 71 Tex., 537. “To ‘satisfy’ a body of men of the truth of a disputed fact, requires much more than a preponderance of the evidence. Clear and convincing evidence must be adduced.” Bradbury, J., in Kelch v. State 55 Ohio St., 146.
*12 The case made in the transcriot before us does not bear the test which the law applies to it. Henry M. Cole was a lawyer and lately a common pleas judge. In 1903 he drew his own will with his own hand. It appears that he made two drafts, possibly three. It is apparent that three witnesses attested these drafts, but if any two of them signed the same draft, the evidence fails to show which draft they signed, for not one of them read the document he signed or heard it read; the nearest identification is each draft was in the testator’s handwriting upon iegai-cap paper ruled.
One of these drafts was attested by a Mr. 'Bowman. No other witness had subscribed to it when he signed it, and he never saw it after-wards. One of the drafts was signed by a Mr. Stubbs, and if it was attested, by whom Stubbs does not remember, but he thinks that the name of Daisy Burtch was not signed. Daisv Burtch signed as a witness to one of the drafts Another witness had signed that paper, and her best recollection is Mr. Bowman was that other witness.
Now, one Thomas L. Brewer testifies that' in the fall of 1904, Judge Cole read his will to him, handed it to him, Brewer read it himself and handed it back to the judge. There was no comment upon it nor discussion about it. . He says there were two names subscribed as witnesses— one was Mr. Bowman’s, and he thinks Mr. Stubbs’ was the other; Daisy Burtch’s name was not there, and he is not positive Mr. Stubbs’ name was there, but he knows there were two names. He *13 never saw the will afterwards nor talked to the judge about it.
Brewer is the only person who assumes to know, or attempts to reproduce, the contents of that will; hence it is upon his recital of the contents that the probate court established the lost or destroyed will, “as near as can be ascertained.” Whether the identification of a lost will “as near as can be ascertained” from the mere memory of one witness, after the lapse of nine years, is sufficient to establish the will, we need not decide, as a bald proposition.
The result of all the evidence in the record shows, to a fair degree of certainty, that in and about the year 1904, Judge Cole had a will and that he intended to dispose of his estate substantially as found by the probate court. But the questions presented to us are: Is the will which he exhibited to Mr. Brewer the last though lost will? Or was the will attested by Daisy Burtch, though lost also, the last will? For we must bear in mind that Mr. Bowman attested but one will; that is the will Daisy thinks she attested, and that is, also, the will which Brewer thinks he read nine years ago; but the will Brewer saw, Brewer is sure, had but two witnesses, one being Bowman. Could Stubbs be the other? Neither he nor Brewer says he was.
Now, there is not an iota of evidence in the transcript to prove that either of the two wills survived the collapse of the testator’s mental faculties; but there is evidence tending to prove that two years before he was adjudged insane he destroyed the will attested by Bowman and *14 Daisy Burtch. The mere statement of these questions which arise on this record, exhibits the uncertainty and unreliability of the evidence submitted to the jury to support the will which was probated.
There is still another question that boldly obtrudes from the case and casts irrepressible doubt upon the verdict. Did Judge Cole have the same intention towards his property and the objects of his bounty at the time he became insane in 1908 as that manifest in the will which Brewer read in 1904? Two or three witnesses, close companions of his, distinctly and positively state that he completely changed his mind within that period, and they give a reasonable and clear account of the natural process of his change of mental attitude in reference to his wife, and his property. He decided that the disposition the law would make of his property “was good enough for him.” And a witness who was intimately associated with him saw him, in October, 1906, destroy the will attested by Bowman and Miss Burtch. As the positive evidence that Bowman signed but one will is unchallenged and’ as Brewer is uncertain that Stubbs’ name was under the name of Bowman on the will which he saw and as Miss Burtch thinks she signed under Bowman, the logic of these facts is that the will which was probated upon Brewer’s evidence was not lost but destroyed by the testator according to a sane and natural purpose.
There is a salient fact in the case which impairs the testimony of Mr. Brewer, under the rule which governs the case. He is the husband *15 of Belle Brewer, a devisee by the will; they are childless; he manages her property, and at her death he may inherit it; and he is named as executor of the will. He has an interest in the case, and is, therefore, not free from the suspicion of bias. For this reason his testimony, apart from the fallibility of human memory of writings read but once, nine years past, does not supply that high degree of certain and indubitable proof which the rule requires. The facts to which we have adverted show that, not only the proof of the contents of the will but of its identity as. another will than the one destroyed in October, 1906, depends upon his testimony; and if the jury could give to his testimony of the contents that degree of credence which satisfies the mind beyond a reasonable doubt, nevertheless his memory of the name of the second witness to the will was confessedly uncertain, and if that witness was Miss Daisy Burtch, then, by all the other proof, the will he saw was destroyed by the testator before he became insane.
The law of this state does not permit a will lost or destroyed to be established unless it was in existence subsequent to the death of the testator or after he became incapable of making a will by reason of insanity. Section 10543, General Code; In re Sinclair’s Will, 5 Ohio St., 290. When a will once known to exist and to have been in the custody of the testator cannot .be found after his decease, or after he became insane, the legal presumption is that it was destroyed by the testator with the intention of revoking it. Behrens v. Behrens, 47 Ohio St., 323.
*16 The proponents of the will call our attention to the testimony of Mr. Stubbs, with whom the testator deposited two packages of envelopes containing papers. He says one was a package of envelopes of the legal size and the other of letter size, and that the testator said, if anything happened to him, Stubbs should turn over the larger package to the testator’s legal representatives, and destroy the smaller package. Two or three years later, the testator called for the packages, saying he thought he was the proper person to keep his papers. The testator burned the shorter package, and part of that package was letters; he took the longer package away. The witness thought his mental condition was not very good. This was in March or April, 1908. Mr. Brewer testifies that in June, 1906, the testator said to him: “I have deposited that will with some other papers with W. G. Stubbs;” and Brewer says that is all the conversation and the only conversation between him and Judge Cole about the will since 1904. It is argued from this evidence that in the long package was the zvill which Brewer had read, and that it was delivered with the papers to Judge Cole in March or April, 1908.
There is other testimony in the transcript to the effect that the judge’s mental disturbance began about the holidays; some witnesses say it was noticeable in the fall of 1907. But the physician who visited his invalid wife daily after Christmas, and saw him at the house, on the street and elsewhere, daily, and administered to him for the physical ailment from which he was then' suffering, says that no symptoms of mental im *17 pairment appeared before the first of April; and that his mental derangement began shortly before he was adjudged insane, and was very rapid; and this is confirmed by the bankers and other close and intimate friends, who observed no mental defect till two or three weeks before he was adjudged insane, which was done on the 11th day of May, 1908.
If the inference is permissible that the will in question was amongst the papers in the packages and was not in the package which the judg'd threw into the fire, still it would be pure conjecture to say that he was “incapable of making a will by reason of insanity” at the time he received back the packages. The evidence is too vague, uncertain and conflicting even to overcome the presumption which the law makes, viz.: that the will was destroyed with the sane intention of revoking it.
We remark in passing that there is no evidence directly to the proposition that, at the time Judge Cole received back the package of documents from his lawyer friend Stubbs, his mental derangement was such as to destroy his testamentary capacity. Whether even at the day he was committed, his reason had suffered total eclipse, or if only partial, it was hallucination or mania which affected his conduct only at intervals and in certain directions, leaving his judgment entirely sound in other respects or at lucid periods, is by no means clear. The evidence as a whole is too fragmentary and indefinite, not knit together with sufficient legal precision and compact logic, to satisfy the increflu *18 lous mind which the law requires the triers to ■have in a case like this.
The conclusion is irresistible that the argument of the proponents is not supported by proof which rises to that degree of certitude and convincing power which is required in the- class of cases to which this case belongs; indeed, the evidence -would not support this will in a case where only a preponderance of proof is required. We cannot sustain the will unless we overturn a salutary rule of evidence adopted by the courts long ago, to prevent evasion and circumvention of the Statutes of Wills and Descents.
This disposes of the case. It is not necessary to pass upon the other assigned errors. Judgments of. the circuit and common pleas courts reversed, and judgment entered here for the plaintiff in error.

Judgments reversed.

Shauck, C. J., Donahue and Wanamaker, JJ., concur.