**AYRES, LOST WILL OF, In Re**

Probate Court, Franklin Co.

No. 86431. Decided Feb. 7, 1940

Carrington T. Marshall, Columbus; Alan I. Pretzman, Columbus and L. DeWitt Agler, on behalf of proponents.

Henry L. Scarlett, Columbus, and O. H. Mosier, Columbus, on behalf of William G. Pace, Admr, et.

Henry E. McArthur, on behalf of himself as executor of estate of Alleta Edwards.

Joseph Donovan, Columbus, on behalf of heirs at law of estate.

## OPINION

By McCLELLAND, J.

This matter comes before the Court on an application for admission to probate of an alleged lost will, the application being filed by the Board of National Missions of the Presbyterian Church in the United States of America and the Board of Foreign Missions of the Presbyterian Church in the United States of America, also on behalf of Erieside Bible Conference Association, an Ohio corporation, and the Moody Bible Institute of Chicago, Illinois, an Illinois corporation, and Lucy W. Thomas. In this matter the applicants were represented by counsel of record, and there was also represented a niece of the alleged testatrix, who, should the testatrix be found to have died intestate, would be her only heir at law under the statutes of Ohio. This niece was represented by counsel of record.

At the opening of the case a question was raised as to whether any one opposing the probate of the will should have a right to cross examine the witnesses produced by the proponents thereof. The statutes of Ohio relating to the probating of and establishing a will provide that the proponents of the will may testify, and such other persons interested in having the will admitted to probate, may have witnesses come before the Court. The statute provides that such witnesses may be cross examined in open court. It is the general practice in Ohio under the above mentioned statute, to permit opponents of the will to cross examine the witnesses who are offered by the proponents thereof. But, when we come to the statutes relative to the establishment and probate of lost, spoliated, or destroyed wills, we find the following language in §10504-37 GC:

"In such cases, the court shall cause the witnesses to such will and such other witnesses as any persons interested in having it admitted to probate desire, to come before the court. They shall be examined by the probate judge, and their testimony reduced to writing and filed by him in his court. When necessary so to do, because witnesses reside out of its jurisdiction, or who, though within such jurisdiction are infirm or unable to attend, the court may order their testimony to be taken and reduced to writing by some competent person, which testimony shall be filed in such court."

It therefore is quite obvious that there is no statutory right on the part of the opponents to such a will to cross examine the witnesses offered by the proponents. It seems to be left to the discretion of the court as to the right on the part of the opponents to cross examine the witnesses brought before the court. It seems to this court that any persons opposing the probate of a will should be permitted, through their counsel, to cross examine the witnesses of the other party, for the reason that they may be able to bring out facts on cross-examination which would be valuable to the court in arriving at a proper disposition of the case. We therefore permitted counsel for the niece to fully cross examine the witnesses offered by the proponents of the will, and have caused the cross examination to be transcribed, and the witnesses to sign a transcript of such testimony.

The application, among other allegations, contains the following:

"That on the 21st day of January, 1939, one Kate T. Ayres, then domiciled in the County of Franklin, State of Ohio, died; that therefore on or about the 4th day of December; 1928, said Kate T Ayres made, subscribed, acknowledged and published her last will; that said last will and testament was duly attested and subscribed to in the presence of two witnesses whom your applicants believe to be J. O. Stone and Clara Casey, both of Columbus, Franklin County, Ohio; that thereafter, to-wit: on the 21st day of December, 1931, the said Kate T. Ayres made, subscribed, acknowledged and published a codicil to the last will and testament previously executed by her on the 4th day of December, 1928, which codicil was duly attested and subscribed to in the presence of the testator by Reda E. Watkins and J. O. Stone, both of Columbus, Franklin County, Ohio, which codicil is herewith produced."

"Your applicants further represent that said last will and testament was not found at, and subsequent to, the death of the testator, and that the codicil to said last will is now, and has been in existence and in the possession of the testator at the time of her death on January 21, 1939. Your applicants represent to the court that the last will dated December 4, 1928, was in existence and unrevoked at the time of its loss, and remained unrevoked at the time of the death of said Kate T. Ayres; that the same cannot be found. although strict search has been made for said will."

"Your applicants further represent that attached hereto, marked 'Exhibit A'. and made a part of this application is a true and correct copy of the last Will of December 4, 1928; that attached hereto, marked 'Exhibit B' and made a part hereof is a true and correct copy of the codicil to said lost last will and testament, which codicil is dated December 21, 1931."

Sec. 10504-35 contains the following language:

"The probate court may admit to probate a last will and testament which it is satisfied was executed according to the provisions of law in force at the time of its execution, and not revoked at the death of the testator, when such original will was lost, spoliated or destroyed, subsequent to the death of such testator, or after he became incapable of making a will by reason of insanity, or before the death of such testator if testator's lack of knowledge of such loss, spoliation or destruction can be proved by clear and convincing testimony, and it cannot be produced in court in as full, ample and complete a manner as the court now admits to probate last wills and testaments, the originals of which are actually produced therein for probate."

Sec. 10504-38 contains the following language:

"If upon such proof, the court is satisfied that such last will and testament was executed in the mode provided by the law in force at the time of its execution, that its contents are substantially proved, that it was unrevoked at the death of the testator, and has been lost, spoliated or destroyed since his death, or his becoming incapable as aforesaid; or before the death of the testator if his lack of knowledge of such loss, spoliation or destruction can be proved by clear and convincing testimony, such court shall find and establish the contents of such will as near as can be ascertained, and cause them and the testimony taken in the case to be recorded in such court."

It therefore becomes quite obvious that if the alleged will cannot be produced, proof of the following matters must be adduced as to the following:

(a) That the will was executed in the manner provided by law in force on December 4, 1928.

(b) That its contents are substantially proved.

(c) That it was unrevoked at the death of the testatrix, and

(d) That it has been lost, spoliated or destroyed since she became incapable as aforesaid.

These four features are in dispute and must be proved by that degree of proof as has been required by the courts of last resort of the State of Ohio.

As to the degree of proof required in such cases, we refer to syllabi No. 2 and No. 3, of **Cole v McClure et, reported in 38 Oh St 1.**

"Syllabi No. 2. To establish a lost or destroyed will the evidence of its execution and its contents must be clear, strong, positive, free from bias, and convincing beyond a reasonable doubt.

Syllabi No. 3. Where a will has been lost or destroyed before the death of the testator, the law presumes that he revoked it; and where he became insane after he made the will, the evidence to overcome this presumption must be certain, satisfactory and conclusive, that it was unrevoked and in existence after he became 'incapable by reason of insanity to make a will'."

The court in discussing the above announced rules, has referred to the case of **Behrens v Behrens, reported in 47 Oh St 323.** The second and third syllabi of that case are as follows:

"Syllabi No. 2. When a will, once known to exist, and to have been in the custody of the testator, cannot be found after his decease, the legal presumption is, that it was destroyed by the testator with the intention of revoking it.

Syllabi No. 3. To strengthen such presumption, it is competent to prove the declarations of the testator after making his will, that he had destroyed, or intended to destroy the same."

This presumption, however, is a rebuttable presumption, and ██ in order to establish the execution and contents of an alleged lost will, the degree of proof shall be that degree which has been defined by the court in the above cited cases.

At page No. 10 of the case of Cole v McClure, the Court uses the following language in the body of the opinion:

"The standard of evidence in cases like the one at bar has been defined by the courts and textwriters in language somewhat variant but in import the same" * * *

The court then proceeds to quote decisions of courts of last resort in a number of states and arrives at a definition of the term "satisfactory evidence" and uses the following language:

"By satisfactory evidence, which is sometimes called sufficient evidence, is intended that amount of proof which ordinarily satisfies an unprejudiced mind, beyond a reasonable doubt."

"To 'satisfy' a body of men of the truth of a disputed fact, requires much more than a preponderance of the evidence. Clear and convincing evidence must be adduced."

We have carefully examined the transcript of the testimony, including the cross-examination, and find the following to be facts: That Kate T. Ayres, for a number of years had employed Mr. Charles W. Wardlow as her attorney, and during that time he had prepared for her one or more wills. That some time prior to December 4, 1928, Kate T. Ayres employed Mr. Wardlow to draw, or assist in drawing, a will for her. Mr. Wardlow made several drafts in long-hand from which Miss Ayres copied, and thereby made a draft in her own handwriting. Mr. Wardlow has no recollection of the execution of said will. Upon cross-examination he does not state positively that the will was executed in his presence, neither does he remember the identity of the witnesses thereto. He says, however, that it was his custom to not permit a will which he had written to leave his office without it being executed.

We find further that Miss Ayres made a copy of some document which copy has been introduced, marked "Exhibit A" and admitted in evidence in this case. This copy was caused to be delivered to Mr. Wardlow a few days after she made the original, or a few days after she executed her codicil, which was in 1931. This copy marked "Exhibit A", has remained in the possession of Mr. Wardlow ever since the date of its delivery to him and until the appointment of a guardian for Miss Ayres. We find further that on the 21st day of December, 1931, Kate A. Ayres caused a codicil to her will to be executed. We find that this codicil has been executed according to the statute. It has been further marked "Exhibit 2" and has been admitted in evidence in this case.

We find further that Kate T. Ayres became incapable by reason of insanity some time during the year 1936; that a guardian was appointed for her on the ground of incompetency on November 2, 1936, which guardianship continued until her death. We find further that the will has not been found since her death. We also find, as a matter of fact, that there is no direct testimony that the alleged will has been seen by any one since a copy was made by Miss Ayres, just subsequent to its drafting, or at the time the codicil was prepared.

With this finding of facts, we will now take up, in their order, the different matters which are required by the statute to be proven.

First. The execution of the will. Sec. 10505 GC, which was in force on the 4th day of December, 1928, contains the following provisions:

"Except nuncupative wills, every last will and testament must be in writing, but may be handwritten or typewritten. Such will must be signed at the end by the party making it, or by some other person in his presence and by his express direction, and be attested and subscribed in the presence of such party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge it."

There is no question in the mind of this court but that a certain document was prepared by Miss Ayres, which she intended to be her will. But there is no positive testimony that she ever signed it, nor is there any direct testimony to the effect that she signed it in the presence of witnesses, or that she acknowledged her signature in their presence. The only evidence of the execution of the will is the statement of Mr. Wardlow that it must have been executed because of the fact it was his custom to cause wills which he had written to be executed before they left his office. Mr. Wardlow has practiced law in the City of Columbus for approximately fifty years. At the time of giving his testimony he was approximately seventy-seven years of age. He was a very careful witness. But his recollection of various matters was rather indistinct. Not only is his recollection indistinct as to his preparation of the drafts, but it is equally indistinct as to the execution of the will and the signatures of the witnesses, if any. The testimony of Mr. Wardlow is not sufficient to convince this Court by that degree of proof which is required in cases of this kind.

Counsel for the proponents contend that the defects in the execution of this will are cured by the presumptions of law applying to cases of this kind.

Our attention has been called to the decision of the Supreme Court in the case of **Baldwin C. Carpenter v Elizabeth S. Denoon et, reported in 29 Oh St 379.** The first syllabus of that case is as follows:

"The attestation clause to a will executed and probated in a sister state, whereof an authenticated copy has been duly admitted to record in this state, is as follows: 'Signed, sealed, and published in presence,' the will being signed at the end thereof by the testator and three witnesses, HELD, in the absence of proof to the contrary, it will be presumed that the testator and witnesses signed the will in the presence of each other."

This Court of course agrees with the above quotation as a correct statement of the law and applying to that particular case. That application, however, is a limited application to those particular facts before the Court and is based upon the general rule which is stated correctly in Jones on Evidence, Third Edition, Section 50.

"It is a rule of general application that documents regular on their face are presumed to have been properly executed and to have undergone all formalities essential to their validity."

Had this will borne the signature of Miss Ayres, and had it borne the signatures of two witnesses, it would then be presumed that the witnesses signed in the presence of the testatrix and was witnessed and attested to in the presence of each as required by law. When a deed is proven, and it is shown that it was signed and witnessesd, and that the signature was acknowledged before a notary public and his jurat attached thereto, it is presumed as a matter of law that the witnesses appeared before the notary public and that all other things short of the formal matters of execution have been fully complied with. This alleged will is not a will regular on its face, for the reason that it does not bear the signature of the alleged testatrix. Neither does it bear the signatures, nor the copies of the signatures of any of the witnesses thereto. It is such a document to which the presumptions ██ of law above referred to, and cannot be applied.

We next come to the proof of the contents of the will. Counsel for the niece has called our attention to the rule of evidence that secondary proof cannot be adduced, nor received by the Court until it has been proven that primary evidence is not available. Objection has been made that there has been no proof of a search for the alleged lost will, and in the absence of such proof the Court is without authority to receive the secondary evidence, such as the copy in the handwriting of Miss Ayres, and produced before this Court. This, of course, is a correct statement of the rule. The Court may, however, find ██ that the circumstances are such that the proof of search is unnecessary.

From the circumstances of the above case, we find that the guardian, who was charged with the possession of all of her papers, alleged that there was no will when he made his application for an administration of the estate. We also find that many papers of Miss Ayres were destroyed a very short time subsequent to her death, and we also find that a will was not in her lockbox where some other important papers were kept by her.

It is our opinion that there has been a sufficient foundation ██ laid for the reception or for the consideration of the copy without the formal proof of search and the failure to find such a will.

Upon examination of the copy of the alleged will, which has been marked "Exhibit A", we find the terminology therein used is not the terminology of an untrained layman, but rather the terminology of one skilled in the preparation of testamentary documents, and it is our opinion that, and we so hold, the document which has been produced as "Exhibit A", and which purports to be a copy of the document which Miss Ayres considered her will, is actually a copy of same. We base this ██ finding, not only upon the peculiarity of the language. but also from the statement of Mr. Wardlow, although the same is not a positive statement.

We next come to the matter of the loss of the alleged will. In order to justify a court in ordering an alleged lost will admitted to probate, among other things, it must be proven that the will was in existence at the death of the testatrix and thereafter destroyed or lost, or that it was in existence at the time the person became incapable of making a will by reason of insanity.

We have most carefully examined the transcript of the testimony and have

considered the same, and we find no evidence whatsoever of the existence of the will from the date of the codicil which is December 21, 1931, up until the date when her first mental illness was noted, which was approximately three or three and one-half years later. Even though the will were actually executed according to law, and in force at the time of its execution, there is very little and only circumstantial evidence of its existence even at the date of the making of the codicil. There is no evidence that Mr. Wardlow had the will before him at the time the codicil was made. He probably had the copy of the alleged will before him at that time, although that is not clear. There is no evidence that Miss Ayres had the will before her, nor that she knew of its whereabouts at the time of the writing and execution of the codicil.

Our attention has also been called to the statements of Miss Ayres relative to the existence of a will. These statements of Miss Ayres are admissible testimony either to rebut the presumption of revocation, or to support the same. The Supreme Court in discussing this phase of the law in the case of **Behrens v Behrens, reported in 47 Oh St 323,** uses the following language at page 332:

"Such a presumption of revocation may be overcome by circumstantial or other proof to the contrary. It may be rebutted by showing that the testator had no opportunity to revoke, and that his will was destroyed after his death. And for this purpose, declarations of the testator to various members of his family down to a few days before his death, expressive of his satisfaction at having settled his affairs, and intimating that his will was left with his attorney, have been held to have been properly admitted. Whitely v King, 17 C. B. N. S. 756; Keen v Keen, L. R. 3 P. & D. 105; In re Johnson's Will, 40 Conn. 587."

"But while the declarations of the testator may be used to weaken the presumption that he has destroyed his will with the intention of revoking it, his declarations may also be received as evidence to strengthen and fortify that presumption that he has destroyed his will with such intention. Whether it be the making of a will or the destroying of one, the competency of the testator's declarations as evidence is alike in each case, and for the same reasons admissible. Collagan v Burns, 57 Me. 465."

After examining the transcript of the testimony of Miss Ayres with reference to this particular phase of the controversy, we find that her statements have very little probative value, and, in addition thereto, we must take into consideration the fact that they were made by a person who the proponents of the will claim to be insane.

We therefore feel that the proof of the existence of the will at the time she became insane is not that degree of proof which is required under circumstances such as we have in this case.

We next allude to the matter of her alleged insanity. Some reference is made to the definition of insanity contained in the recently enacted statutes relative to the admission of persons to State Hospitals and other hospitals for the treatment of the mentally ill and the insane. It is our opinion that the definition of insanity therein contained is restricted in its application to those proceedings provided for in the sections of the statutes relating to the admission of persons to state hospitals and other state institutions.

It is our opinion that the standards or criteria by which the testamentary capacity is determined, is that which is laid down by the Supreme Court, in the case of **Niemes v Niemes et reported in 97 Oh St 145.** From the testimony we are compelled to reach the conclusion that on or about the 2nd day of June, 1935, Kate T. Ayres did become insane as measured by the standards above referred to, but that she did have short lucid intervals after the date of her insanity.

Counsel for the proponents have suggested to the Court a most interesting theory which is in substance that a will and codicil or codicils thereto, con-

stitute one will, and that if a testator had destroyed or obliterated a portion of same, not with the intention of revoking the will, and, if the portion destroyed or obliterated remains legible or can be produced, that destruction or obliteration will not destroy the will but that the entire will shall be produced and probated in the form in which it was executed. We agree with counsel that that statement is a statement of general law. We are compelled to disagree with counsel in their contention that the will and codicil constitute one will. A will and codicil constitute a testatmentary plan of disposition, but the rule just stated relative to the interlineation, modification or attempted destruction of a portion of a will applies to one separate instrument and not a person's entire testamentary plan. Should the contention of counsel be correct, one could not revoke a codicil without revoking the entire will. Nor could one make a new codicil without revoking the entire will. Nor could one make a new codicil without revoking all of the preceding codicils. The suggestion is a very interesting one and we have examined the citations suggested to us by counsel for the proponents, and also counsel for the niece. There is a difference of opinion by courts of last resort, but it is our opinion that the greatest weight of authority is that a will and codicil, or codicils, are separate and ▮▮▮▮▮▮ distinct instruments, and that the law pertaining to interlineation or attempted change applies to each instrument individually. We further feel that a codicil is ancillary or suplemental to a will. It must be by its very definition. One may revoke a will by a codicil or he may modify a will by a codicil, or he ▮▮▮▮▮▮ may revoke the codicil and allow the will to stand. But he cannot revoke a will and thereby allow the codicil to stand, for the reason that a codicil is ancillary or supplemental to and depends upon the will. Applying this holding to the matters at hand, if the will falls the codicil must fall.

Now in summing up the whole matter, and considering the evidence in the light of the rules of law by which this Court is bound, we find that in two particulars, at least, that is in the execution of the will and in its existence at the time the testatrix became incapable by reason of insanity, the proof falls far short of that degree of proof which is required to rebut the presumption of its revocation.

It is therefore the finding of this Court that the prayer of the application for the probate of ▮▮▮▮▮▮ the lost last will, and also for the probate of the codicil must be denied. An order may be drawn accordingly.