[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the admission of a photocopy of the Last Will and Testament of Janet Nugent on February 11, 1992 in the Probate Court District of Cheshire.
The grounds for this appeal is that the Probate Court erred in admitting an unsigned document that purports to be a copy of Janet Nugent's Will that was drafted in 1977. Jane Nugent died at age 104. An appeal from the Probate Court's admission of the copy of an original Will is a trial de novo. The burden of proof at trial requires the proponents of her copy to prove by clear and CT Page 9279 convincing evidence (1) that an original Will was duly executed in compliance with the Statute of Wills C.G.S. §§ 45a-250 et seq.; (2) that the original Will was last in possession of the Testatrix prior to her death; (3) that a diligent search was made for the original Will and could not be found; (4) that the contents of the original Will could be established by independent evidence and; (5) that the testatrix did not intend to revoke her Will.
The Petitioner claims that the issues to be decided in this case are (1) did the defendants produce clear and convincing evidence of the contents of the original Will and; (2) did the defendants produce clear and convincing evidence that Janet Nugent did not intend to revoke her original Will. The Petitioner did not concede the issues of due execution and testamentary capacity. Accordingly, the court is compelled to discuss those issues as well.
The standard of proof to admit copies of lost or destroyed Wills such as the one before the court is by clear and satisfactory proof. In the Matter of Johnson's Will, 40 Conn. 587. The parties in this case stipulated that the Will was not found after a diligent search was made and that an unsigned photocopy of a document [Defendants' Exh. 1A] was later found by Attorney Dennis R. Ferguson, attorney for the defendants herein.
An examination of the Probate File [Defendants' Exh. 1] discloses that Janet Nugent requested the return of her original Will, which was held by Meriden Trust and Safe Deposit Company in Meriden, Connecticut, at her direction by Attorney Gary O. Olson, a member of the Connecticut Bar. [See Olson affidavit] A signed receipt for the receipt of the Will is dated February 1, 1988. The parties stipulated that the original Will was executed August 2, 1977, and was last in the possession of the decedent Janet Nugent.
Janet Nugent died May 2, 1991. Attorney Olson had requested the return of Jane Nugent's Will and Mr. William Ferguson's Will at the same time. William Ferguson [hereafter Will or Uncle Will] was the brother of Janet Nugent and they lived together since the year 1953.
Janet Nugent executed her last known Will on August 2, 1977 drafted by Attorney Sargent who at his deposition testified he did not recall the contents of her original Will and did not make a practice of keeping copies of Wills executed by clients. Wayne Sargent testified that the Will was duly executed in the presence CT Page 9280 of his wife, Elaine M. Nugent who was also deposed. [Defendants' Exh. 1B].
Mr. Sargent testified that Mrs. Nugent was of sound mind. Elaine Sargent also testified Mrs. Nugent was of sound mind. They both witnessed the Will and Mrs. Nugent declared it to be her Will. [Defendants' Exh. 2].
Mr. Sargent had no independent recollection of the contents of the original Will he drafted. He did testify that the copy he was shown at his deposition was a copy of Janet's original Will because it was on his stationery. He unequivocally asserted that the photocopy which he saw at his deposition was a copy of Janet Nugent's original Will. The photocopy shown to Attorney Sargent is an exact photocopy of the Proposed Copy for Probate in this case [Defendants' Exh. 1A].
The court from the evidence adduced at trial finds that the original Will in 1977 was duly executed and witnessed and that Janet Nugent had the required testamentary capacity as provided for under the Statute of Wills.
The proponents of the photocopy of the original Will have presented clear and satisfactory proof that the document admitted by the Probate Court is a copy of the original Will.
Notwithstanding that the copy of the Will presented to the Probate Court is a true copy of the Will the plaintiff asserts that under our law that the burden of proof is yet on the defendants to show the court by clear and convincing evidence that the contents of the photocopy are the same as that provided for in the original Will.
At the time that Janet Nugent drew her Will she was under the impression that she had but one living son, Robert Nugent. The testamentary scheme of her original Will was to give her son Robert her real property in her estate which was the family farm, and if deceased then to his children living at the time of his death. The children of Robert, Janet Bates and Donald Bates are not named in the Will. The rest of her residual property other than the real estate is devised per stirpes to the children by name of her children one known to her to be dead and the other Thomas Nugent, the petitioner, presumed dead, and to her son Robert or his children, if deceased. Attorney James P. Rock was appointed by the Probate Court of Cheshire after Elizabeth Harrel daughter of Thomas CT Page 9281 Nugent opposed the Admission of the copy of the Will to represent Thomas Nugent's interests. Attorney Rock was successful in finding Thomas Nugent.
Robert died in July 1987. Mrs. Nugent and her brother William Ferguson requested their Wills from the Meriden Bank and received them August 2, 1988. Mrs. Nugent was 101 years of age then. Her brother William Ferguson was 94. Mr. Ferguson revoked that Will, since he executed a new Will in August 1991.
Thomas Nugent in his deposition [Defendants' Exh. 4] testified he heard that members of the family tried to find him but with no success; that his mother Janet Nugent never found out he was alive.
From all the evidence presented the proponents of the unsigned copy of the original Will [Defendants' Exh. 1A] have by clear and satisfactory evidence established that the contents of the copy of the original Will are the same that was contained in the original Will. The court cannot speculate what Janet Nugent would have done had she known that her only son Thomas Nugent was alive. She had clearly designated who Thomas' heirs were; "children of Thomas' former wife Mrs. Harold Vaugh, 4100 Pawnee Road, Richmond, Virginia. It is clear and convincing that at the time of her son Robert's death when she requested her Will from the Meriden Bank that she was under the impression that all her children were dead and her only survivors were now her grandchildren.
Therefore, the only remaining issue to be addressed is the key issue in this case. In the Matter of Johnson's Will, supra, 588 the court stated:
 "The mere absence of the will raises presumption that it was revoked. Whether that presumption is one of law or of fact is perhaps immaterial, as in either case it must be rebutted by proof."
In Johnson the court found that the Will was not intended to be revoked because it found the testator had decided symptoms of insanity and from the time he had his Will he was wholly "bereft ["benefit] of his reason".
In the present case no claim is being made nor was there any evidence to shows that Janet Nugent was incompetent or did not know what she was doing before her death. CT Page 9282
Trudy Brown who was hired as the housekeeper for Janet Nugent was the only unrelated witness at trial to the decedent. Brown was hired in 1988. She worked days, prepared the meals and did laundry. William Ferguson was also always there and she cared for William after Mrs. Nugent's death. Trudy Brown testified that Janet Nugent was always excited when Janet Bates known as "Scotchie" would come to visit. Janet Nugent never discussed Donald Bates the other child of Robert. Trudy Brown never discussed anything concerning Wills with William.
The only material evidence that Trudy Brown offered at trial was that Janet Nugent stated she was leaving everything to Scotchie because her other grandchildren had been paid off. No testimony was given by Trudy Brown about any discussions with Janet Nugent about her Will. Trudy Brown further testified that Laura Wilhite, Janet Nugent's niece, was the person who hired her and did everything for Janet Nugent during 1989 and 1990. Laura Wilhite did her bills and tended to all personal matters.
Laura Wilhite, [hereinafter Wilhite] recalls that Thomas Nugent visited for a few days in 1956. The decedent didn't see him after that and did not know what happened to him. Wilhite testified she saw both Bob and Mary, Mrs. Nugent's other two children, three or four times. Wilhite set up a schedule for the care of her aunt Janet and Uncle Will. Wilhite testified that Janet Nugent never discussed the terms of her Will with her. Janet Nugent had even stated the farm would go to Wilhite and her sisters because Wilhite was her "girlfriend" and so good to her and Uncle Will.
Wilhite knew that the Wills of Janet were kept in the Bank and she saw certified envelopes from the Bank on the table where Uncle Will kept his papers but did not know what the envelopes contained.
Wilhite testified that in 1989 Janet Nugent was still mentally alert, even up to the time of her death.
Wilhite testified that Uncle Will in 1992 executed a Will and that she and Janet Bates are the beneficiaries.
Elizabeth Nugent Harrel (hereinafter Harrel) another granddaughter in her deposition [Plaintiff's Exh. B] testified that after her Uncle Bob's death, the last known living child of her decedent, her grandmother, in March 1990 in the presence of Uncle CT Page 9283 Will discussed that her intention was that all grandchildren would share equally. Harrel testified that her grandmother told her she wanted to rewrite her Will after Bob died so all grandchildren would share equally. Harrel further testified that the reason Janet Nugent was leaving the farm (the real estate) to Bob, was because he was expected to come to live in Connecticut and take care of Janet Nugent and William Ferguson for the rest of their lives and after their deaths to live on the farm.
Harrel testified her grandmother never told her the estate would go to "Scotchie" and Donald Bates and in fact Donald Bates was not close to his grandmother.
Harrel further testified that in 1977 Janet Nugent changed her Will after the death of Janet Nugent's other brother, Jim. Janet Nugent and William Ferguson then owned one-half the farm each.
Harrel testified she did not believe that her grandmother would have a discussion over her estate with Trudy Brown.
Janet Bates testified her father gave her a copy of her grandmother's Will. She further testified that the copy presented for Probate [Defendants' Exh. 1A] was not her copy or that of her father. She was not sure when she last saw her copy nor was her father's copy ever found.
Janet Bates testified the last time she had a face to face contact with her grandmother, the decedent was in 1989. She further testified she never discussed her grandmother's estate with her.
There was no evidence presented that the decedent at anytime before her death spoke of a Will as an existing instrument, nor that any changes had occurred in the circumstances or relationships with potential beneficiaries.
The burden of proof is on the proponents, the defendants in this case to prove that the original Will was not revoked or destroyed. Such proof as already discussed herein is by clear and satisfactory evidence.
The evidence presented in this case did not reach a level of satisfactory, proof to overcome the presumption of revocation in cases of lost or destroyed Wills. CT Page 9284
The only evidence shown is that "Scotchie" may have been her favorite grandchild but under the testamentary scheme Donald Bates, who was relatively distant from his grandmother would share equally with "Scotchie". Such testamentary scheme does not overcome the presumption of revocation of the original Will. Further the fact that "Uncle Will" did execute a new Will shortly after his sister Janet Nugent's death raises an inference that when they asked for the return of their Wills from the Bank they both intended to write new Wills. The court can only infer that Janet Nugent no longer intended that the testamentary scheme in the original Will is what she wanted at the time of death. She never during her lifetime spoke after the return of the original Will from the custody of the Bank that she had a Will to carry out her desires.
Accordingly, judgment may enter in favor of the Plaintiff sustaining the appeal of the order admitting the unsigned copy of Janet Nugent's Will by the Probate Court for the District of Cheshire.
The court denies any costs pursuant to C.G.S. § 45-193.
Frank S. Meadow State Trial Referee