## In re will of MARTHA HEDGEPETH.

### (Filed 10 March, 1909.)

**1. Wills, Lost or Destroyed—Probate, Common Form—Jurisdiction.**

The clerk of the Superior Court has jurisdiction to take probate of a lost will, or of one which was not destroyed by the testator, or was destroyed by him when not having the *animo revocandi*, and an action in the nature of a bill in equity to set up the will is unnecessary.

**2. Same—Contents—Evidence—One Witness.**

It is necessary to the probate of a will before the clerk in common form to show its execution was in the manner prescribed by statute (Revisal, sec. 3113), but its contents may be proven by the clear and satisfactory testimony of one witness.

**3. Wills, Lost or Destroyed—Probate—Evidence, Sufficient.**

It is sufficient for the probate of a will in common form before the clerk when it is shown by affidavits that it was properly executed and attested, the death of the testator, the contents, and that a person other than the testator, with whom it was last seen, had destroyed it.

**4. Wills—Probate—Common Form—Caveat—Right of Party in Interest—Laches.**

A person interested is entitled to file a *caveat* to a will probated in common form and require the propounder to prove the will in solemn form, if the right has not been lost by acquiescence or unreasonable delay. (Revisal, sec. 3135). As to whether laches can be imputed without notice of probate in common form, *Quære.*

**5. Same—Reasonable Delay.**

A reasonable time which will bar the next of kin or heir at law to file a *caveat* to a will probated in common form has not been settled by the Court; but that of seven years, fixed by the Acts of 1907, ch. 862, passed subsequently to the probate in this case, is applicable.

**6. Wills, Lost or Destroyed—Probate—Solemn Form—Proof Required—Propounder—Burden of Proof.**

Upon the filing of a *caveat* to a will probated in common form the propounder must prove the will *per testes* in solemn form, and the burden is upon him to show (1) the formal execution as prescribed by statute; (2) the contents, if the original was not produced; (3) the loss of the original will or that it had not been destroyed by the testator or with his consent or procurement.

**7. Same—Presumption of Revocation—Evidence.**

> When the propounder, to establish a will in common form, does not produce the original, or when it is not to be found, there is a presumption of fact that it was destroyed by the testator *animo revocandi*, which will have to be overcome by competent evidence; and affidavits admitted before the clerk when the will was admitted to probate in common form is incompetent.

ACTION tried before *Ward, J.,* and a jury, at December (Special) Term, of NASH.

Appeal by Ruffin Lyon.

The record discloses this case: On 11 May, 1900, John T. Hedgepeth offered for probate before the Clerk of the Superior Court of Nash County a paper writing purporting to be the last will and testament of Martha Hedgepeth, in words and figures as follows, to wit:

"NORTH CAROLINA—Nash County.

I, Martha Hedgepeth, of Nash County and Nashville Township and State of North Carolina, being of sound mind and disposing memory, do make and declare this to be my last will and testament: I give to John T. Hedgepeth, formerly known as John Massengill, son of Martha Massengill, widow of T. Massengill, all my land situate in Nashville Township, Nash County, and bounded as follows: S. L. Arrington, Isaac Wombleton and others, known as a part of the John Evans land, containing forty acres, more or less.

               "MARTHA (her X mark) HEDGEPETH.  [Seal.]"
     "Witness: R. F. DRAKE,
               J. C. HARPER."

The propounder filed the affidavit of J. C. Harper, setting forth that he was a subscribing witness to the will of Martha Hedgepeth; that R. F. Drake, the other subscribing witness, is dead; that said Martha Hedgepeth, in the presence of deponent and R. F. Drake, the other subscribing witness, subscribed her name at the end of said paper writing, of which the one now presented is, in substance, a true copy, which original bears the date of same time, about 1889 or 1890. The deponent further saith that the said Martha Hedgepeth, the testatrix afore-

said, did, at the time of subscribing her name, as aforesaid, declare the said paper writing so subscribed by her, a copy of which is exhibited, to be her last will and testament, and that at her request defendant subscribed his name thereto as a subscribing witness; that she was of sound mind and memory, of full age, etc. The propounder also filed the affidavit of Mrs. Tolie Cooper, setting forth that she was at the home of Martha Hedgepeth, who was sick, when John C. Harper and R. F. Drake came to write her will; that R. F. Drake wrote the will, and, at the request of Mrs. Hedgepeth, R. F. Drake, after signing and witnessing, handed the will to her husband, L. W. Hedgepeth. Mr. Drake asked Mr. Hedgepeth if he should bring the will with him to Nashville. Mr. Hedgepeth answered no, he would be in Nashville in a few days and bring the will with him. After all had left, Martha Hedgepeth told deponent that she had made her will and given all she had to John Hedgepeth. She was of sound mind and disposing memory. Deponent filed the affidavit of Jordan Brewer, stating that "A short time before L. W. Hedgepeth was married the second time, he told deponent 'there was a will, but John Hedgepeth will never get that land, for I have put that will to ashes.' "

Upon the foregoing affidavits the clerk adjudged that the paper writing and every part thereof is the last will and testament of Martha Hedgepeth, and admitted it to probate in common form.

On 19 March, 1906, Mary E. Etheridge and others, heirs at law of Martha Hedgepeth, filed a *caveat* to said will in the office of the Clerk of the Superior Court of Nash County, whereupon citations were issued to Ruffin Lyon, who purchased the land from John Hedgepeth, and others, heirs at law, to come in and see the proceedings. An issue of *devisavit vel non* was thereupon made up and transmitted to the Superior Court of Nash County for trial. At the December Term, 1907, the issue was tried before the court and a jury, when the following evidence was introduced by the propounders:

J. C. Harper testified: "I know Martha Ann Hedgepeth. I was at her house. Captain Drake was writing a paper. Captain Hedgepeth sent for me to witness it. Captain Drake went

out and wrote a will—what purported to be a will—and I read it to her. Captain Drake and I witnessed it. It was in 1889. It willed forty acres. She said she wanted to give to John Hedgepeth. I read it to her, and she signed it. I heard it was destroyed, and I do not know anything about it, except it left forty acres to John Hedgepeth." .

Mrs. Tolie Cooper testified: "I know Mrs. Hedgepeth. I was there at the time in question. I was there when it was written. She said it was her will. She had given everything she had to John Hedgepeth. It was several years ago. She is dead. I do not know what became of it nor the contents of it."

Mrs. Beauregard Griffin testified: "I was the widow of L. W. Hedgepeth. I never saw the will at all. I heard her say she had made the will to keep her out—that she did not want her people to have it."

The affidavit of Jordan Brewer was offered and excluded. Exception by the propounder, who assigned said ruling as error.

The propounder proposed to show by Mrs. Griffin that she had heard some outside party say that she had destroyed the will and that John Massengill had never had the land.

The propounder offered in evidence the record of a paper writing purporting to be the last will and testament of Martha Ann Hedgepeth, on file in the office of the clerk of the Superior Court. It was admitted that said paper writing had been made up and written after the death of Martha Ann Hedgepeth on *ex parte* affidavits before the clerk of the Superior Court, and without any petition having been filed in said proceeding before the clerk to set up the contents of the lost or destroyed will, and that no notice had been issued to the parties interested of the proceedings before the clerk, in which said will was set up, but that said lost or destroyed will had been proven in common form. The paper writing was, on objection, excluded by the court. The propounder and his grantee duly excepted.

There was no evidence before the court that Martha Ann Hedgepeth, at the time of making the alleged will, had signed said will in the presence of the two witnesses, requested them to sign it, or that they had signed it in the presence of each other. There was no evidence that the will was lost or destroyed—no evidence about it, one way or the other.

At the close of the propounder's evidence his Honor, being of the opinion that the entire proceeding before the clerk was irregular, and that there was no evidence before the court to show a last will or destroyed will, and no petition having been filed by the propounder asking to be allowed to set up and prove the contents of the lost will, directed the jury to answer the issues as set out, and dismissed the proceeding, and signed the judgment found in the record. The propounder and his grantee excepted. From the judgment the propounder and Lyon appealed.

*T. T. Thorne* for appellee.
*Jacob Battle* and *Joseph B. Cheshire, Jr.,* for appellant.

Connor, J., after stating the case: It is well settled by the decisions of this Court that the clerk has jurisdiction to take probate of a lost will, or one destroyed by some person other than the testator, or by the testator not having the *animo revocandi*. It is not necessary in either case to bring an action in the nature of a bill in equity to set up the will. *McCormick v. Jernigan,* 110 N. C., 406; *Evans' will,* 123 N. C., 113. His Honor was therefore in error in holding that the entire proceeding before the clerk was irregular and void. We think that there was evidence before the clerk entitling the propounder to have the will admitted to probate in common form. It seems to be well settled that while it must be shown that the will was executed as prescribed by the statute (Revisal, sec. 3113), if lost or destroyed, its contents may be proven by the testimony of one witness, provided the evidence be clear and satisfactory. "The contents of a lost will may be proved by the evidence of a single witness, though interested, whose veracity and competency are unimpeached." This was held after a most learned and exhaustive discussion by the Court of Appeals in *Sugden v. St. Leonard,* 1 L. R., Probate Div., 154. It has been uniformly so held by the courts in this country. *In re Johnson's will,* 40 Conn., 587; *Mercer v. Mackin,* 77 Ky., 434. "If the subscribing witnesses to the lost will are living and within the jurisdiction of the court, they must be produced and examined, as in other cases, to prove execution. If they are dead, or their

presence cannot for any valid reason be procured, the execution of the will may be proved by substitutionary evidence." 1 Underhill Wills, sec. 274. The court, in such cases, proceeds with caution, and requires satisfactory proof in regard to the contents of the will, its due execution and its destruction or loss otherwise than by the testator or with his consent. It would seem that the proof before the clerk measured up to the standard required. Mr. Harper's affidavit showed the execution of the will, its attestation by Mr. Drake and himself, the death of Mr. Drake and the contents of the will. Mrs. Cooper's affidavit was corroborative in every respect. The affidavit of Brewer showed the declaration of L. W. Hedgepeth, the person with whom the will was last seen, that he had destroyed it. The only question in regard to this evidence was whether such declaration was competent. It is true there was no affidavit that a search had been made or that Hedgepeth was dead. However this may be, there was sufficient evidence to justify the clerk in admitting the paper writing to probate in common form.

It is, however, equally clear that any person interested in doing so was entitled "as of common right" to file a *caveat* and require the propounder to prove the will in solemn form, provided such right had not been lost by acquiescence or unreasonable delay. Revisal, sec. 3135. What is a reasonable time beyond which the next of kin or heir at law will be barred because of acquiescence has not been settled by this Court. The question is discussed by *Pearson, J.,* in *Etheridge v. Corprew,* 48 N. C., 14. It would seem that he was of the opinion that no laches would be imputed unless they had notice of the probate. He says: "Certainly delay cannot be considered as amounting to laches until the petitioners are fixed with notice; and as they are entitled, as of common right, to have the script propounded in solemn form, it was for the respondents to allege and prove all the facts necessary to establish a forfeiture of that right." *Smith, C. J.,* in *Randolph v. Hughes,* 89 N. C., 428, discusses the authorities. We find that the Legislature (Acts 1907, ch. 862) has fixed the time within which the *caveat* must be filed at seven years. We find nothing to indicate that, in the absence of any controlling circumstances, a shorter time

would, prior to the statute, bar the caveators, and we adopt the statutory period in this case. Therefore, when the *caveat* was filed and the bond given, as required by the statute, the propounder was called upon to prove the will *per testes* in solemn form. Upon the trial of the issue the propounder carried the burden to show: (1) The formal execution of the will, as prescribed by the statute. This he could do by calling the subscribing witnesses or by accounting for their absence, resorting to ●the best competent evidence obtainable. (2) To show the contents of the will, if the original was not produced. This, as we have said, could be done by a single witness, if no other was obtainable. (3) To show that the original will was lost or had been destroyed otherwise than by the testatrix or with her consent or procurement. *Mayo v. Jones,* 78 N. C., 402; Redfield Wills, 349; 1 Underhill Wills, sec. 274. The will not being found, there is a presumption of fact that it was destroyed by the testator *animo revocandi.* Some courts have held that this is a presumption of law, but the better view is as stated. *Redfield, J.,* in *Minkler v. Minkler,* 14 Conn., 125, says: "It is not, then, a legal or artificial presumption of law, like the *presumptiones juris et de jure* of the civil law, that the will is burned, etc.; it is, at all events, revoked. So, too, it being destroyed, or lost in any other mode, no doubt we would hold, as the English ecclesiastical courts have done, that the mere absence of the will did *prima facie* amount to a revocation. But we would hold this merely as a natural presumption, as matter of fact, and imposing the duty upon him who asserted the contrary to support his assertion by proof." *Jackson v. Brown,* 6 Wend., 173. It seems that if the will is shown to have been last seen in the custody of a third person no presumption of revocation would arise. *Shultz v. Shultz,* 35 N. Y., 653; 2 Greenleaf Ev., 681. We do not think the *ex parte* affidavits, taken before the clerk when the will was admitted to probate in common form, competent evidence upon the trial of the issue. The caveators were not parties—had no opportunity to cross-examine the witnesses or contradict them. The issue was to be tried upon evidence then and there introduced before the jury. Jordan Brewer's affidavit was incompetent. *Scott v. Maddox,* 113 Ga., 795.

This brings us to consider the question whether the evidence introduced by the propounder entitled him to go to the jury. Assuming that the execution and contents of the will were proven, there was a failure of proof to account for its nonproduction. Mrs. Cooper does not testify, as stated in her affidavit, that the will was handed to L. W. Hedgepeth. On the contrary, she says, after testifying to its execution: "I do not know what became of it nor the contents of it." There is no evidence tending to show that Mrs. Hedgepeth parted with the will after signing it. The presumption was not rebutted; in fact, there was no evidence tending to do so. His Honor correctly excluded the evidence of Mrs. Griffin. It is a hardship upon Lyon, who, relying upon the proof of the will in common form, purchased the land. It would seem that, for the protection of titles and purchasers, it would be well to require all wills in which real property is devised to be proven in solemn form. It would seldom occur to a layman or a lawyer that the title to land devised in a will was open to the uncertainty of a jury verdict for seven years after the probate of the will. If it had appeared that the caveators had notice or knowledge that the will had been admitted to probate and Hedgepeth had taken possession of the land, asserting ownership, we should have thought three years a reasonable time within which to have filed a *caveat*. In the light of our decisions and the testimony, we concur with his Honor's ruling. The judgment must be

Affirmed.