IN THE MATTER OF THE LAST WILL AND TESTAMENT OF HARDY WEST, DECEASED.

(Filed 19 March, 1947.)

**1. Wills § 23b—**

In cases of doubtful testamentary capacity, testator's exclusion from his bounty of those related to him by blood is competent.

---

IN RE WILL OF WEST.

---

**2. Trial § 31f—**

The court is not required to give the contentions of the litigants at all, but where the court undertakes to state the contentions of one party upon a particular phase of the case it is incumbent upon the court to give the contentions of the other party upon the same aspect. G. S., 1-180.

**3. Same: Appeal and Error § 6c (6)—**

As a general rule the ground for objecting to the statement of contentions must be brought to the court's attention in apt time to afford opportunity for correction in order for an exception based thereon to be considered, but this rule has many exceptions based upon the importance of the inadvertence and its probable prejudicial effect.

**4. Trial § 31f: Wills § 25—**

In this caveat proceeding caveator strongly contended that the fact that testator left half his estate to two Negroes and only half to those related to him by blood disclosed mental incapacity. Propounders contended upon supporting evidence that the Negroes were testator's natural children. *Held:* The court having given caveator's contentions upon this phase of the case, it was error for the court not to have given propounders' contentions in explanation thereof.

**5. Appeal and Error § 39f—**

While a charge must be considered contextually, such construction cannot be invoked to reconcile conflicting instructions upon a material aspect which are not inter-explanatory or correctional and remain repugnant after such construction.

**6. Trial § 31d: Wills § 25: Appeal and Error § 39h—**

In a caveat proceeding an instruction to the effect that the burden was on caveator to prove mental incapacity by the greater weight of the evidence but that if the preponderance of the evidence on the issue was on the side of propounders to answer the issue as contended by propounders, *is held* contradictory and confusing and constitutes prejudicial error.

**7. Wills § 26—**

Where a will is attacked on the ground of undue influence and mental incapacity it is the better practice to submit separate issues in regard thereto rather than the single issue of *devisavit vel non.*

**8. Wills § 22—**

A caveat proceeding is *in rem* with the burden on propounders to prove the formal execution of the paper, and the burden on caveator to prove by the greater weight of the evidence undue influence or mental incapacity when relied upon by him.

APPEAL by propounders from *Olive, Special Judge,* at November Term, 1946, of WAYNE.

This proceeding involves a contest over the last will and testament of Hardy West, a resident of Wayne County.

West, a bachelor, lived alone in what has been referred to as his "ancestral home,"—a property derived in part by descent from his mother and part acquired by purchase. It consisted of a farm, dwelling house and out houses which, with several tracts added by West from time to time, was estimated to be worth about $20,000.

West was prosperous up to the time of his death and had accumulated considerable personal property. He personally conducted his business and farming operations, and the marketing of his produce up to the time of his death, although in his last years he was in bad health, in a dropsical condition which needed and received hospitalization, medical and surgical treatment.

In a separate dwelling in the "yard" lived Gertrude Sherard, an unmarried colored woman who had cooked and washed for West and lived "around his house" for about 20 years. During that time there were born to her two children, the boy, Earl, and a girl, Burnice. At the time of Hardy West's death Earl was about 17 years old and Burnice 12 or 13.

On West's trips away from the farm, made in connection with his business; getting in supplies and marketing his crop, he was in later years usually accompanied by Earl Sherard. To him, at different times, West had given two automobiles, and frequently gave him money, particularly when he requested it, in sums of $10, more or less, for his spending. Gertrude Sherard, the mother, had died some months before the making of the will. For some time prior to the execution of the will, L. D. West, a nephew of Hardy and son of Walter West, the caveator, returned from military service and with his wife and children took up his abode with his uncle.

The will makes an approximately equal division of the real estate and personal property, devises the real estate to L. D. West and Earl Sherard, respectively, for life, with remainders to their children upon named contingencies not necessary to consider at this time, and bequeathes the personalty one-half to L. D. West and one-half to Earl Sherard upon stated terms. A trusteeship is set up for the two minor beneficiaries, Earl and Burnice Sherard. The will having been probated in common form, W. L. West, brother of the testator, filed a caveat, setting up a want of mental capacity on the part of the testator and undue influence exercised upon him by persons unnamed in the petition. L. D. West aligned himself with the caveator, his father.

The executors undertook to propound the will in solemn form under the single issue *devisavit vel non.*

The adverse testimony relating to testamentary capacity came principally from the caveator and those related by family ties. Testifying to the testamentary capacity of West, and affirming the same, were a large number of persons who, the evidence indicates, had been in intimate

contact with him in business relations up to the time of his death and others who observed him and had communications with him, who gave as their opinion that he was in full possession of his mental faculties, had sufficient mental capacity to know his property, the objects of his bounty, and to fully understand the full force and effect of his will; that he was of sound mind.

In the cross-examination of these witnesses there was repeated recurrence of questions so formulated as to bring out the fact that West had devised about one-half of his property, including that descended from his mother, to Negroes, to the exclusion of his brother or white relatives. Answers to some of these questions were to the effect that the Negroes to whom he gave the property were his own children. There was further evidence that testator had said, "The only ones that cared about him and would do anything for him, were these two children, Earl and Burnice Sherard."

Typical of these questions is the following:

"Q. If you had known that the will referred to of Hardy West devised approximately half of his real estate to a Negro boy and girl, would that change your opinion as to whether or not on March 21, 1946, he knew and appreciated the natural objects of his bounty?"

"A. I would have to know all the circumstances surrounding his life and his way of life."

A similar inquiry brought this response from the witness:

"I heard that he gave the major portion of his property to two Negro boys. The fact that he left his property to a Negro boy and girl would not affect my opinion of his mental capacity. I think he knew who were the natural objects of his bounty."

"Q. In your opinion was that a natural disposition for a white man to make of his property?"

"A. There are circumstances."

And, again, upon the same query:

"The fact that he devised property that he received from his mother to some colored boy would not affect my opinion. I think he placed it like he wanted it. I think the giving of that land to the colored children was a natural disposition of his property."

Similar questions brought various answers, one of the witnesses stating in positive language that Earl and Burnice Sherard were children of Hardy West.

Upon this state of the evidence the propounders except to the instructions given to the jury by the court for that in stating the contention of the parties, the contentions of the caveator with respect to the phase of the case above mentioned were stated at length, whereas the explanation of what might be regarded as an unusual disposition of the property in giving it to those not the natural objects of his bounty was not given at

all, no reference having been made in the charge to the fact or the possibility that Earl and Burnice Sherard were the natural children of the testator.

There is further exception to the charge respecting the burden of evidence contained in the following passage:

"Gentlemen of the jury, the Court instructs you that the evidence, if believed by you, would establish the formal execution of the paper writing dated March 21, 1946, as the last will and testament of Hardy West and that said paper writing so executed by him is his valid will, unless you should find from the evidence and by its greater weight, the burden being upon the caveator, in respect to mental capacity, that at the time of its execution Hardy West did not have the mental capacity which the law requires for the execution of a will. (By 'greater weight of the evidence' we simply mean that the evidence in your minds must be over-balanced on the side of the caveators before they would have carried the burden of proof by the greater weight of the evidence upon the mental capacity issue.) Propounders except to foregoing portion of charge in parentheses.

"(If it has been so over-balanced they would have carried the burden of proof by the greater weight of the evidence, but if it is over-balanced on the side of the propounders, that is, that he did have sufficient mental capacity, it would be your duty to answer the issue as the propounders contend.) Propounders except to foregoing portion of charge in parentheses."

And, further:

"(If, on the other hand, you are satisfied from the evidence and by its greater weight that he did not have sufficient mental capacity, it would be your duty to answer the issue NO, as contended by the caveators, and if it is over-balanced in your minds the slightest degree as to mental capacity, they would have carried the burden of proof by the greater weight and it would be your duty to answer the issue NO. If you are not so satisfied by the greater weight, and believe the evidence as to the formal execution of the will, it would be your duty to answer the issue YES.)"

As stated, the issue submitted to the jury was:

"Is the paper writing dated March 21, 1946, offered in evidence, and every part thereof, the last will and testament of Hardy West, deceased?"

The jury answered the issue, "NO."

To the ensuing judgment the propounders objected and excepted, and appealed.

B. F. Aycock, N. W. Outlaw, and Langston, Allen & Taylor for propounders, appellants.

J. Faison Thomson for caveators, appellees.

SEAWELL, J.  The only exceptions taken at the trial are to the instructions given the jury, and the formal exception to the judgment taken to preserve them on appeal.  We consider two of these exceptions: The first suggesting an inadequacy in stating the propounders' contentions, and the second relating to the burden of proof between the propounders and the caveators.

1. Our attention is directed to the objection that in stating the several contentions of the propounders and the contentions upon the evidence relating to the natural objects of the testator's bounty in its bearing on testamentary capacity, the court fully stated those of the caveator, and failed to state those of the propounders, which were in the nature of an explanation and necessary to remove a prejudicial effect from the minds of the jury.

The burden of the repeated questions on cross-examination addressed to the witnesses who affirmed the mental capacity of the testator seems to put as much emphasis on the fact that the objects of his bounty were Negroes as it does upon the fact that they were strangers to the blood.

We are not required at this time to say to what extent testamentary capacity may be impeached by infractions of, or want of conformity to traditions, customs, standards of the testator's community or section, which are supposed to strongly influence personal conduct.  In cases of doubtful testamentary capacity, however, evidence of an exclusion of those who, by ties of blood, might be supposed to be the natural objects of the testator's bounty has been accepted as bearing upon the question of mental capacity.  *In re Will of Hinton,* 180 N. C., 206, 104 S. E., 341; *In re Redding's Will,* 216 N. C., 497, 5 S. E. (2d), 544.

The fact is that the evidence affords a tangible basis for the contention that Earl and Burnice Sherard were the natural children of the testator, however immoral the suggested relation.  In view of the prominence given it in the trial, the fact that they were of Negro blood gives added emphasis to the necessity of adverting to the explanatory circumstances in stating the propounders' contentions.

It is not required by G. S., 1-180, or other statute, that the contentions of the litigants be stated at all, although it is found to be a convenient method of integrating and presenting to the jury the subjects for consideration; *S. v. Colson,* 222 N. C., 28, 21 S. E. (2d), 808; and there is no rule making it mandatory.  "When, however, the judge states the contentions of one of the parties, he must fairly charge also as to the contentions of the adversary litigant."  *S. v. Colson, supra; Messick v. Hickory,* 211 N. C., 531, 535, 191 S. E., 43.

The contentions of the propounders were based on evidence relating to the same aspect of the case.  *Messick v. Hickory, supra.*

As a general rule, an exception to a statement of the contentions will not be sustained on appeal unless the matter was called to the attention

of the court at the time and an opportunity given to correct it. *S. v. Grainger,* 223 N. C., 716, 28 S. E. (2d), 828; *S. v. Britt,* 225 N. C., 364, 34 S. E. (2d), 408; *Steele v. Coxe,* 225 N. C., 726, 732, 36 S. E. (2d), 288; *Vance v. Guy,* 224 N. C., 607, 612, 31 S. E. (2d), 766; *Mfg. Co. v. R. R.,* 222 N. C., 330, 23 S. E. (2d), 32.

But there are so many exceptions to the rule that we may safely say that each case must be referred to the particular circumstances, to be decided upon the importance of the incident and its probable prejudicial effect. *S. v. Love,* 187 N. C., 32, 121 S. E., 20.

We understand the delicacy of the matter handled by the court below and the danger which might attend magnification of this phase of the trial. It is our opinion, however, that the situation demanded a fuller statement of the propounders' contention upon this phase of the evidence, and the failure to give it was error.

2. The instructions as to the burden of proof must have left the jury in doubt where to place it, either with respect to the issue at large or the several questions embraced within it. We were assured by appellees that the charge, considered contextually, relieves it from prejudicial effect.

A charge, it is true, must be considered contextually, when challenged for error. *S. v. French,* 225 N. C., 276, 45 S. E. (2d), 157; *S. v. Shook,* 224 N. C., 728, 32 S. E. (2d), 329; *Motor Co. v. Insurance Co.,* 220 N. C., 168, 16 S. E. (2d), 847; *Harrison v. Insurance Co.,* 207 N. C., 487, 177 S. E., 423; *Cab Co. v. Casualty Co.,* 219 N. C., 788, 15 S. E. (2d), 295. But where there are conflicting instructions it often becomes a serious question as to the impression made on the jury when the charge is so taken. When the passages are not inter-explanatory or correctional, and, after being considered contextually are still repugnant, the court should be slow to assume that there was no prejudicial effect. *Ward v. R. R.,* 224 N. C., 696, 32 S. E. (2d), 221; *S. v. Oxendine,* 224 N. C., 825, 32 S. E. (2d), 648. We think the final instructions given as to the respective burdens of the propounders and the caveators were contradictory and confusing.

The probate of a will in solemn form under caveat is a proceeding *in rem.* Where the will is attacked for want of testamentary capacity or undue influence it is, perhaps, preferable to submit separate issues directly pertinent to these questions; McIntosh, Civil Procedure, p. 547; *In re Efird's Will,* 195 N. C., 76, 141 S. E., 460; *In re Rawlings' Will,* 170 N. C., 58, 86 S. E., 794; but the practice is often otherwise. In the case at bar the single issue of *devisavit vel non* was submitted. Upon this issue it was incumbent upon the court to resolve the inquiry into the several questions involved, so as to properly assign the burden as to each, rather than to treat the issue integrally.

Regarding the proceeding as *in rem,* it is the established rule here that the propounders have carried their burden when the formal execu-

tion of the will has been shown; subject, of course, to the successful attack made upon it by the caveators upon the ground of undue influence or mental incapacity. The burden of establishing these contentions by the greater weight of the evidence rests upon the caveators. *Bailey v. McLain,* 215 N. C., 150, 161, 1 S. E. (2d), 372; *In re Fuller's Will,* 189 N. C., 509, 127 S. E., 549; *In re Chisman's Will,* 175 N. C., 420, 95 S. E., 769; *In re Thomas' Will,* 111 N. C., 409, 16 S. E., 226; *In re Hedgpeth,* 150 N. C., 245, 251, 63 S. E., 1025; *In re Will of Redding, supra,* p. 499; *In re Will of Harris,* 218 N. C., 459, 11 S. E. (2d), 310; *In re Craven's Will,* 169 N. C., 561, 86 S. E., 587. There was no question as to the execution of the will raised by the petition nor did the caveators dispute it.

In the instant case, as we may observe, his Honor seemed to place the burden first upon the caveators, then upon the propounders to support the affirmative or negative of the issue by preponderating evidence, without discrimination as to their respective burdens.

For these reasons the propounders are entitled to a trial *de novo.* It is so ordered.

New trial.