STATE v. CLYDE BRANNON AND EDGAR GARREN.

(Filed 21 November, 1951.)

**1. Homicide § 25—**

Where the evidence shows an intentional killing with a deadly weapon, nonsuit may not be allowed on the charge of second degree murder notwithstanding defendants' contention, supported by evidence, that they killed deceased in self-defense in arresting him in the discharge of their official duties as law enforcement officers, since the presumption from the intentional killing with a deadly weapon takes the case to the jury with the burden upon defendants to show matters in mitigation or excuse.

**2. Homicide § 30—**

Any error in the submission of the question of guilt of murder in the second degree is rendered harmless by a verdict of manslaughter.

**3. Criminal Law § 53d—**

The failure of the court to charge the jury not to consider testimony to which the court had sustained defendants' objections will not be held for error when the record discloses no objections were made to the eliciting questions, no request to strike the answers interposed, and no request made that the court instruct the jury not to consider the answers.

**4. Criminal Law § 81c (3)—**

The admission of testimony to the effect that deceased was very weak at the time the fatal shot was fired will not be held for prejudicial error when there is competent expert medical testimony tending to show that of necessity deceased was in a weakened condition at that time.

**5. Criminal Law § 78e (2)—**

    Misstatement of the contentions of the State or of the defendants must be brought to the court's attention in apt time.

**6. Arrest § 2: Homicide § 27f—**

    Exception to the charge for the court's failure to explain the difference between self-defense as applied to ordinary persons and as applied to officers attempting to make a lawful arrest cannot be sustained when the record discloses that the court fully charged the jury as to defendants' right in making a lawful arrest to be the aggressors and to use all reasonable force apparently necessary to overcome any resistance, even to the taking of life, in discharging their duty to arrest deceased.

**7. Criminal Law § 81c (2)—**

    Exceptions to the charge will not be sustained when the charge is without prejudicial error upon a contextual construction.

APPEAL by defendants from *Rudisill, J.,* August Term, 1951, of CHEROKEE.

The defendants were tried on a bill of indictment charging them with murder in the first degree of one Hoyt Barton. Upon the call of the case for trial, the solicitor announced in open court that the State would not ask for a verdict of murder in the first degree, but would ask for a verdict of murder in the second degree, or manslaughter, as the evidence might warrant.

The evidence of the State tends to show that about 4:30 or 5:00 p.m., 9 June, 1951, the deceased, Hoyt Barton, and Bill Palmer, were playing a game of pool in Brownie's Pool Room in Murphy, Cherokee County, North Carolina. They had both been drinking. During the course of the game they went into the rest room to take another drink. As they were about to take a drink, Clyde Brannon, Chief of Police of Murphy, came into the rest room, took the bottle of whisky and poured it out. According to the testimony of Bill Palmer who testified for the State, after the officer poured the whisky out, Hoyt Barton returned to the pool table and some words, which the witness did not remember, passed between the officer and Barton, and the first thing he knew the officer was going toward Barton with his blackjack. Barton struck the officer with his fist and knocked him down and the officer said, "Bill, get him." "I walked over to where Hoyt was and took him out of the pool room, and we went up toward the Safety Cab stand. When we got to the corner, about one-half block, and turned out to the cab stand, we noticed Clyde was following us, and Hoyt turned facing him and backed over to the cab stand. I said to Clyde, 'Let Hoyt get in the cab and go home, and if you got anything against him, take it out some other time,' and Clyde said, 'No, I am going to kill the s.o.b. or put him in jail.' Hoyt was standing with the cue stick in his hand, sliding his arm around the cue stick and

twisting his arm. I heard Hoyt say, 'Clyde, when you kill me you will kill five little kids,' and about that time Clyde raised his gun a little and shot, and then Hoyt came toward him with the cue stick and struck him with the cue stick, and then Ed Garren (a special police officer not on duty at the time) came up and was drawing to hit him with the blackjack and Hoyt tried to tear loose from him and then Brannon shot again, and then Hoyt hit him with the cue stick again, and . . . Ed Garren and Clyde and Hoyt all got together again and Clyde and Hoyt had their arms around each other and the gun fired again, and after the gun was fired Ed gave Hoyt a shove and Hoyt went down . . . and Ed Garren went up and got the pistol and went away a few steps . . . and turned around facing Hoyt and Hoyt was 12 or 15 feet away from him, and then Ed Garren fired and then Hoyt took a side step and went down on the pavement. Brannon was about 10 or 12 feet from Hoyt when he fired the first shot . . . I had not heard anything said about arresting Hoyt." On cross-examination, this witness testified, "I knew it was unlawful to take nontax-paid liquor. I knew that Hoyt and me had been caught in the violation of the law."

The testimony of this witness as to what occurred after Barton and Palmer left the pool room, was corroborated by Ed Dockery and R. V. Dockery, who testified for the State, each one testifying that the defendant Brannon shot Barton before Barton hit him with the cue stick. The State's evidence further tends to show that the defendant officers said nothing to the deceased about arresting him except the statement made in his presence by the defendant Brannon to Bill Palmer that he intended to kill him or take him to jail. The evidence also tends to show that Barton had dropped the cue stick and "was sort of slumped when he was shot by Garren."

After the shooting the deceased was taken to a hospital and died four or five days later from the results of the multiple gunshot wounds inflicted on him by the defendants.

The evidence of the defendants is in sharp conflict with that of the State. The defendant Brannon testified: That when he walked in the pool room and saw Palmer and Barton go into the rest room, he walked back there and saw Barton hand Palmer a bottle. He said, "Boys, I'll take that," and Barton said, "G— d— you, you can't do that." He took the liquor out of Bill Palmer's hand and poured it out. He then said, "Hoyt, go home," and he said, "I am not going." When he would not go home, he said, "Hoyt, you are under arrest," then they scuffled around over the floor. He had known the deceased for fifteen years; that he judged him to be over six feet tall; weight around 190 to 200 pounds; that he was about 35 years of age, and that he knew he had the reputation of being a dangerous and violent man when drunk. That Barton grabbed

him and he called for help. "He hit me three or four times. My weight is 158 pounds. I am 5 feet 7 inches tall, and am 45 years of age . . . I got loose from him and he hit me again then he knocked me down and I got up and ran around the table to keep him from getting me any more. Then he got a cue stick and I told the fellows there in the pool room, 'If not any of you fellows are going to help me, go outside and get help for me.' . . . I told Bill Palmer to help me, and Bill got a-hold of him and stopped him . . . I deputized Bill Palmer to help me . . . I got outside and met Ed Garren . . . who was an extra policeman, and I deputized him to help me. I gave Garren my blackjack, and I told Hoyt, 'You are under arrest, you have to go with me,' and kept telling him to drop the cue stick and go with me like a man, and got up there, and Bill said he would take him home. I said, 'Bill, don't interfere any more. I am going to take him.' Then Hoyt said, 'Then shoot me, G— d— you.' "

This witness denied saying he was going to take Barton to jail or kill him, but testified that as the deceased was in the act of hitting him with the cue stick he shot at his right arm; that the deceased hit him several times with the cue stick and he shot at his left arm. He further testified he was unconscious when the third shot was fired and does not remember anything about it.

The defendant Garren testified: "I didn't see what happened to Brannon and Barton in the pool room. I saw Barton get shot the first time. I don't know where it hit him. I saw him shot the second time . . . I shot at his leg. He had been shot at three times when I shot. I didn't know whether he had been hit or not. He talked to me before I shot him. I backed off three or four steps. I think he had the cue stick in his hand when I shot."

The State offered a number of witnesses who testified that the deceased did not have the general reputation of being a dangerous and violent man.

The jury returned a verdict of guilty of manslaughter.

From the judgment entered, the defendants appeal, and assign error.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*C. E. Hyde and O. L. Anderson for appellants.*

DENNY, J. The failure of the court below to sustain the defendants' motion for judgment as of nonsuit, and their motion for a directed verdict of acquittal as to the charge of murder in the second degree, is assigned as error.

The ruling of the court below on these motions was proper and will be upheld. It is true the defendants were law enforcement officers and are contending that they killed the deceased in self-defense while in the

discharge of their official duties. Nevertheless, this does not change the general rule that where the evidence shows an intentional killing with a deadly weapon, the law implies malice, and the State cannot be non-suited. As stated in *S. v. Utley,* 223 N.C. 39, 25 S.E. 2d 195, "And when this implication is raised by an admission or proof of the fact of an intentional killing, the burden is on the defendant to show to the satisfaction of the jury facts and circumstances sufficient to reduce the homicide to manslaughter or to excuse it." *S. v. Vaden,* 226 N.C. 138, 36 S.E. 2d 913; *S. v. Debnam,* 222 N.C. 266, 22 S.E. 2d 562; *S. v. Mosley,* 213 N.C. 304, 195 S.E. 830; *S. v. Terrell,* 212 N.C. 145, 193 S.E. 161; *S. v. Keaton,* 206 N.C. 682, 175 S.E. 296; *S. v. Johnson,* 184 N.C. 637, 113 S.E. 617.

Furthermore, submission to the jury of the question of the guilt of the defendants of murder in the second degree was harmless since the jury returned a verdict of manslaughter. *S. v. Artis,* 233 N.C. 348, 64 S.E. 2d 183; *S. v. Beachum,* 220 N.C. 531, 17 S.E. 2d 674; *S. v. Blackwell,* 162 N.C. 672, 78 S.E. 316.

The defendants assign as error the failure of the court to instruct the jury not to consider statements made by the witnesses R. V. Dockery and Ed Dockery to the effect that "Hoyt (the deceased) got so weak" just before the defendant Garren fired the last shot. The court sustained the objections to the statements even though the defendants interposed no objections to the preceding questions.

Since no objections were made to the questions which preceded the statements and no request to strike the answers were interposed, and no request was made to the court to instruct the jury not to consider them, these exceptions were waived. *S. v. Holland,* 216 N.C. 610, 6 S.E. 2d 217; *S. v. Gooding,* 196 N.C. 710, 146 S.E. 806; *S. v. Green,* 152 N.C. 835, 68 S.E. 16. Moreover, we consider the statements harmless in view of the medical and other testimony which was before the jury. Barton had been shot three times by Brannon before he was shot by Garren, and if Garren's own testimony is to be believed, he fired the fourth shot which entered the left leg of the deceased. This shot, according to the medical testimony, entered the left leg near the groin and came out through the thigh. Prior thereto, one shot had entered the right forearm of the deceased and came out about an inch and a half below his elbow, and another one entered the back of the left arm and came out the front above the elbow. Still another shot entered his right chest; this bullet ranged upward and punctured the upper right part of his lung and fractured his windpipe.

The appellants have preserved and brought forward thirteen exceptions to contentions of the State, or the defendants, as given to the jury by the court in its charge.

It is well settled that any misstatement of the evidence by the trial judge in reciting the contentions of the State, or a defendant, should be brought to his attention in apt time in order to afford him an opportunity for correction. *S. v. Shackleford,* 232 N.C. 299, 59 S.E. 2d 825; *S. v. Warren,* 227 N.C. 380, 42 S.E. 2d 350; *S. v. Biggerstaff,* 226 N.C. 603, 39 S.E. 2d 619; *S. v. Smith,* 221 N.C. 400, 20 S.E. 2d 360.

The defendants complain and assign as error the failure of the court to properly define and apply the law to the facts and explain the difference between self-defense as applied to ordinary persons and as applied to officers attempting to make a lawful arrest.

Pertinent parts of the charge complained of with respect to the rights and duties of officers while making an arrest, are as follows: "If you find from the evidence that the defendant Brannon apprehended the deceased, Hoyt Barton, in a violation of the prohibition law, I charge you that it was the duty of the officers to place him under arrest . . . The officers owed the deceased no duty to allow him to go home nor were they required or under any duty to put off the arrest to a more favorable time. . . .

"The court further charges you that where an officer has legal authority to arrest, and while using proper means, if resisted, he may repel force with force and need not give back an inch; but he may not use excessive force. . . . When an offender resists arrest the officer may use sufficient force to overcome resistance, and if the resistance is with a deadly or dangerous weapon, and I charge you that the cue stick introduced in evidence here is a deadly weapon, the officer may resort to such force as necessary to avoid serious injury and accomplish the arrest. He is never required under such circumstances to afford the resisting offender the opportunities of a fair and equal struggle, but may avail himself of any advantages that arise in the conflict.

"It is the law of this State, and I charge you that forcible resistance to lawful arrest will not be sanctioned. As against those who defy its decrees and threaten violence to its officers, the law commands that its mandates be executed, peaceably, if they can, forcibly if they must. An officer making an arrest, either in case of felony or misdemeanor, may meet force with force, sufficient to overcome it, even to the taking of life if necessary . . . He is rightfully the aggressor, and he may use such force as is necessary to overcome any resistance. . . .

". . . Where officers, engaged in making arrests, are acting in good faith, and force is required to be used, their conduct should not be weighed in golden scales. I therefore charge you, gentlemen of the jury, that if you should find from the evidence in this case that the defendants used no more force than appeared to them to be necessary at that time and under the circumstances then confronting them, the homicide would be justifiable and it would be your duty to return a verdict of not guilty.

"I charge you that it is the law in this State that duly summoned assistants or persons deputized by an officer attempting to make an arrest are under the same protection of the law which is afforded the officer attempting such arrest. Therefore, if you find from the evidence that the defendant Garren was duly summoned or deputized by the officer Brannon to assist in making or attempting to make an arrest of the deceased Hoyt Barton, the law affords the defendant Garren the same protection as it affords the defendant Brannon.

"If you find from the evidence that Brannon, the police officer, while attempting to arrest the deceased for a violation of the prohibition law of the State, in the presence of the officer, was withstood and resisted by the deceased, and in resisting assaulted the officer with a cue stick . . . making it appear to the officer it was necessary to shoot the deceased in order to subdue him and place him under arrest, the action of the officers was fully justified.

"The court further charges you that an authorized officer of the law in arresting an offender may use force, the degree of which is largely within his own judgment, as is necessary to accomplish his purpose, and when withstood and his authority and purpose made known, he may use the force necessary to overcome resistance, to the extent of taking human life if that be required for the proper and efficient performance of his duty, without criminal liability, unless the force has been excessively and maliciously used to such a degree as amounts to a wanton abuse of authority; and this applies whether the offense charged be a felony or misdemeanor."

We do not think this assignment of error is well taken. It is not contended by the appellants that the court's charge on the law ordinarily applicable to the right of self-defense is erroneous; and the charge with respect to the rights and duties of an officer while making an arrest was in substantial accord with our decisions on the subject.

*Stacy, C. J.,* in speaking for the Court in *Holloway v. Moser,* 193 N.C. 185, said: "An officer, in making an arrest or preventing an escape, either in case of felony or misdemeanor, may meet force with force, sufficient to overcome it, even to the taking of life, if necessary. *S. v. Dunning,* 177 N.C. 559. And he is not required, under such circumstances, to afford the accused equal opportunities with him in the struggle. He is rightfully the aggressor, and he may use such force as necessary to overcome any resistance . . . If the offender put the life of the officer in jeopardy, the latter may *se defendendo* slay him; but he must be careful not to use any greater force than is reasonably and apparently necessary under the circumstances, for necessity is the ground upon which the law permits the taking of life in such cases." *S. v. Miller,* 197 N.C. 445, 149 S.E. 590; *S. v. Fain,* 229 N.C. 644, 50 S.E. 2d 904.

Moreover, the defendants do not except to any specific portion of the charge on this phase of the case. And it would seem that if any portion of the charge complained of, in this respect, is subject to criticism, it is because it was more favorable to the defendants than our decisions require.

We have carefully examined the remaining assignments of error to the court's charge, and when it is considered contextually, as it must be, it is, in our opinion, without prejudicial error. *In re Will of West,* 227 N.C. 204, 41 S.E. 2d 838; *S. v. French,* 225 N.C. 276, 34 S.E. 2d 157; *S. v. Davis,* 225 N.C. 117, 33 S.E. 2d 623; *S. v. Manning,* 221 N.C. 70, 18 S.E. 2d 821.

There are many other exceptions and assignments of error on this record which we have not discussed, but after a careful examination and consideration of them, none of them, in our opinion, is sufficient to disturb the verdict below.

A careful review of the entire record leads us to the conclusion that the real issue in the trial below was whether or not the defendants used excessive force in their attempt to subdue and arrest the deceased. The jury resolved the issue against the defendants in a trial free from error in law. The verdict of the jury will be upheld.

No error.